UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | No. 1:04-CR-160 |
| v. | ) | |
| | ) | Chief Judge Curtis L. Collier |
| | ) | |
| REJON TAYLOR | ) | |

**MEMORANDUM**

Before the Court is Defendant Rejon Taylor's ("Defendant") "Motion to Strike and/or Dismiss Sentencing Allegations in the Indictment and Aggravators in the Notice of Intent to Seek the Death Penalty" (Court File No. 166). The government responded to the motion (Court File No. 185) and Defendant filed a reply brief (Court File No. 191). For the following reasons, the Court will **GRANT IN PART** and **DENY IN PART** Defendant's motion.

**I.    STANDARD OF REVIEW**

Defendant's memorandum in support of his motion requests the Court to "strike and / or dismiss the sentencing allegations in the Indictment, and the statutory and non-statutory aggravators in the Notice to Seek the Death Penalty as to Rejon Taylor, as in violation of the Fifth, Sixth and Eighth Amendments to the Constitution of the United States (the "Constitution"), and for other reasons" set forth in the memorandum (Court File No. 167, p. 1).

The Fifth Amendment to the Constitution states:

No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, except in cases arising in the land or naval forces, or in the Militia, when in actual service in time of War or public danger; nor shall any person be subject for the same offence to be twice put in

> jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation.

Specifically, a person can be tried only upon the indictment as found by the grand jury and especially upon its language found in the charging part of the instrument. *See Stirone v. United States*, 361 U.S. 212 (1960) (holding a variation between pleading and proof deprived petitioner of his right to be tried only upon charges presented in the indictment). Indictments found by grand juries may be amended by the prosecution only in limited circumstances. In *Ex Parte Bain*, 121 U.S. 1, 12 (1887), the Supreme Court of the United States (the "Supreme Court") held that the indictment could not be changed at all by the prosecution. *United States v. Miller*, 471 U.S. 130 (1985), partly reversed *Ex Parte Bain*; now, an indictment's scope may be narrowed by the prosecution. Thus, lesser included charges may be dropped, but new charges may not be added.

> The Sixth Amendment to the Constitution reads:
>
> In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defence.

The constitutional right to be informed of the nature and cause of the accusation entitles the defendant to insist that the indictment apprise him of the crime charged with such reasonable certainty that he can make his defense and protect himself after judgment against another prosecution on the same charge. *Bartell v. United States*, 227 U.S. 427 (1913); *Burton v. United States*, 202 U.S. 344 (1906); *United States v. Simmons*, 96 U.S. 360 (1878); *United States v. Cruikshank*, 92 U.S. 542, 544, 558 (1876). Finally, the Eighth Amendment to the Constitution reads "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual

punishments inflicted."

## II.     RELEVANT FACTS AND PROCEDURAL HISTORY

On October 13, 2004, the government filed a four-count indictment (the "Indictment) against Defendant (Court File No.1). The Indictment included six (6) sentencing allegations as to Defendant (Court File No. 1, Pages 5-6, ¶¶ 1, 4, 5, 6, 7 and 8a-c). On June 1, 2006, the government filed its notice of intent to seek the death penalty (the "Notice"). The Notice lists four statutory intent factors[1] under 18 U.S.C. §§ 3591(a)(2)(A)-(D) and three statutory aggravating facts[2] under 18 U.S.C. §§ 3591(c)(1). All four of the statutory intent factors and statutory aggravating facts one and two were set forth as sentencing allegations in the original indictment presented to the grand jury. The third statutory aggravating fact, substantial planning and premeditation, was not presented to the grand jury in the original indictment.

The Notice also sets forth two main sub-sets of non-statutory aggravating facts under 18 U.S.C. § 3593(a) and (c): (1) "Participation in Additional Uncharged Murders, Attempted Murders, or Other Serious Acts of Violence"; and (2) "Future Dangerousness." As these non-statutory facts relate to Defendant's attempted escape from a detention facility in Chattanooga, Tennessee on April 14, 2006, these facts were not included in the original Indictment presented to the grand jury.

---

[1]The four statutory intent factors listed are: (1) intentional killing; (2) intentional infliction of serious bodily injury; (3) intentional act to take life or use lethal force; and (4) intentional act in reckless disregard for life.

[2]The three statutory aggravating facts listed in the Notice are: (1) death during the commission of another crime; (2) grave risk of death to additional persons; and (3) substantial planning and premeditation.

3

## III. DISCUSSION

The Federal Death Penalty Act ("FDPA") sets forth the procedure by which the jury must determine punishment under the FDPA. *See* 18 U.S.C. §§ 3591-3598. This procedure is well-summarized in *United States v. Nguyen*, 928 F. Supp. 1525, 1532 (D. Kan. 1996):

> First, the jury must determine whether [the defendant] had the requisite intent to commit the death eligible offense. 18 U.S.C. § 3591(a). If the jury unanimously finds beyond a reasonable doubt that intent is established, it moves to the next step in the penalty process. If the jury does not so find, the deliberations are over and the death penalty may not be imposed.
>
> Assuming the jury finds the requisite intent, it must then consider the statutory aggravating factors alleged by the government in its notice to seek the death penalty. The statutory aggravating factors from which the government may choose are listed at 18 U.S.C. §§ 3592(c)(1)-[(16)]. The jury must determine whether the government has proven at least one of the statutory factors alleged beyond a reasonable doubt. 18 U.S.C. § 3593(c). If the jury unanimously so finds, it moves to the next step of the penalty process. If not, the deliberations are over and the death penalty may not be imposed. 18 U.S.C. § 3593(d).
>
> Assuming the jury finds at least one statutory aggravating factor, it must then consider that factor or factors, plus "any other aggravating factor for which notice has been provided," 18 U.S.C. § 3593 (d) ("non-statutory aggravating factors"), and weigh them against any mitigating factors to determine whether the death penalty is appropriate. 18 U.S.C. § 3593(e). Non-statutory aggravating factors, like their statutory counterparts, must be unanimously found by the jury beyond a reasonable doubt, while mitigating factors need only be established by a preponderance of the evidence. Further, any juror persuaded that a mitigating factor exists may consider it in reaching a sentencing decision; unanimity is not required. 18 U.S.C. § 3593(c),(d).

*See also Jones v. United States*, 527 U.S. 373, 376-78 (1999).

Defendant's memorandum sets forth four main arguments: (1) the Notice "violates the Fifth Amendment requirement that facts which increase a defendant's punishment must be charged by a grand jury in an indictment;" (2) the sentencing allegations in the Indictment and the factors/facts used in the Notice "fail to properly narrow the population of offenders upon whom the death penalty

4

may be imposed" in violation of the Fifth and Eighth Amendments to the Constitution; (3) the "government's death penalty notice and the sentencing allegations in the Indictment must be striken [sic] because they fail to provide the notice required by the Constitution['s Due Process Clause and the Sixth Amendment] and by 18 U.S.C. Section 3593(a)"; and (4) the "non-statutory aggravator alleging attempted escape must be striken [sic] because its use denies the defendant the presumption of innocence to which he is entitled" under due process. The court will address each of Defendant's arguments in turn.

> **A. The Indictment Clause Requires Statutory Intent and Aggravating Factors to be Included in the Indictment, but Does Not Require Non-Statutory Factors to be Included in the Indictment.**

Since the third statutory aggravating fact listed in the Notice, substantial planning and premeditation, as well as the two subsets of non-statutory facts listed in the Notice (participation in additional uncharged serious acts of violence and future dangerousness) were not charged in the Indictment nor were they presented to or voted upon by the Grand Jury, Defendant argues the government's "reliance on these aggravators to increase the maximum sentence from Life imprisonment to Death violates the Fifth Amendment, as interpreted by the Supreme Court of the United States in *Apprendi v. New Jersey*, 530 U.S. 466, 476 (2000)." Essentially, Defendant argues *Apprendi* and *Jones v. United States*, 526 U.S. 227 (1999) should be read to require the government to allege *all* aggravating factors (both statutory and non-statutory aggravating factors) in the indictment in a death penalty case.

*Apprendi* held any fact increasing the maximum punishment, other than prior convictions, must be charged in the indictment, submitted to the grand jury, and proved beyond a reasonable doubt. *Apprendi*, 530 U.S. at 490. Two years later, in *Ring v. Arizona*, 536 U.S. 584 (2002), the

Supreme Court cleared up some ambiguities left by that decision and emphasized that the *Apprendi* ruling applies to capital-sentencing schemes, and where at least one aggravating circumstance must be found before a death sentence can be imposed, the finding of that particular aggravating circumstance operates as the "functional equivalent" of an element of the offense and thus must be determined by a jury under the reasonable doubt standard.[3]

A similar mandate flows from the Fifth Amendment's Indictment Clause: "In federal prosecutions, such facts must also be charged in the indictment." *United States v. Higgs*, 353 F.3d 281, 296 (4th Cir. 2003) (quoting *United States v. Cotton*, 535 U.S. 625, 627 (2002)); *see also United States v. Promise*, 255 F.3d 150, 156-57 (4th Cir. 2001) (en banc) (holding that, when applying *Apprendi* to a federal prosecution, a fact that increases the maximum penalty "must be treated as an element of an aggravated . . . offense, i.e., charged in the indictment and proved to the jury beyond a reasonable doubt" (footnote omitted)); *id.* at 157 n. 6 (rejecting argument that "a fact that increases the maximum penalty must be treated as an element for purposes of some rights guaranteed by the Fifth Amendment ( e.g. the right to a determination of guilt beyond a reasonable doubt) but not others ( e.g., the right to indictment by a grand jury)").

Therefore, with the exception of the fact of a prior conviction, a defendant may not be exposed "to a penalty exceeding the [statutory] maximum he would receive if punished according to the facts reflected in the jury's verdict alone." *Apprendi*, 530 U.S. at 483. In determining whether a particular fact or factor is to be treated as an element of the offense, as opposed to a sentencing factor, "the relevant inquiry is one not of form, but of effect - does the required finding expose the defendant to a greater punishment than that authorized by the jury's guilty verdict?" *Id.* at 494.

---

[3]*Ring* dealt with a prisoner's conviction and sentence under a state death penalty statute.

Under the FDPA, as discussed above, a defendant does not become eligible for the death penalty unless the jury finds at least one statutory intent factor, see 18 U.S.C.A. § 3591(a)(2), and at least one statutory aggravating factor, see 18 U.S.C.A. § 3592(c). *See Jones*, 527 U.S. at 376-377; see also 18 U.S.C.A. § 3593. Because a defendant may be sentenced only to life imprisonment unless the jury finds the existence of at least one intent factor and one statutory aggravating factor, the Court logically concludes statutory intent factors and statutory aggravating factors increase the penalty for the crimes charged against Defendant in the Indictment beyond the otherwise maximum sentence of life imprisonment.

As a result, statutory intent factors and statutory aggravating factors (other than prior convictions) which the government intends to rely upon to render a defendant death-eligible under the FDPA are the functional equivalent of elements of the capital offenses and must be charged in the indictment, submitted to the petit jury, and proved beyond a reasonable doubt. In this case, only one statutory aggravating factor was included in the Notice but was not included in the Indictment: substantial planning and premeditation. Therefore, the Court finds it improper for the government to rely upon the substantial planning and premeditation statutory aggravating factor to render Defendant death-eligible under the FDPA.

Further, the Court sees no purpose in allowing the substantial planning and premeditation statutory aggravating factor to remain in the Notice. At least one of the statutory aggravating factors found by the petit jury in imposing the death sentence must be one of the statutory aggravating factors charged by the grand jury in the indictment. *United States v. Allen*, 406 F.3d 940, 943 (8th Cir. 2005) ("the same facts that the Sixth Amendment requires to be proven to the petit jury beyond a reasonable doubt in state and federal prosecutions must also be found by the grand jury and

7

charged in the indictment in federal prosecutions"). The Government correctly concedes "if the current indictment remains as it is, the jury could not rely on substantial planning and premeditation as the sole aggravating factor to trigger consideration of the death penalty" (Court File No. 185 at 5). If the petit jury unanimously found substantial planning and premeditation present without finding other statutory aggravating factors, it would not trigger the consideration of the death penalty. On the other hand, if the petit jury found substantial planning and premeditation present along with finding other statutory aggravating factors present, the other factors would trigger the consideration of the death penalty. Allowing substantial planning and premeditation factor to remain in the Notice would not further a legitimate purpose. Therefore, the Court will **GRANT** Defendant's motion to strike the substantial planning and premeditation statutory aggravating factor from the Notice.

The Indictment Clause does not require that non-statutory aggravators relied upon by the government at trial of the capital offenses be included in the indictment since non-statutory aggravating factors do not increase the available punishment to which a defendant might be subjected; rather, the purpose of non-statutory aggravators is to aid the factfinder in selecting the appropriate sentence from the available options, i.e., death or life imprisonment. 18 U.S.C §§ 3591(a)(2), 3592(c). *Higgs*, 353 F.3d at 298. Therefore, the Court will **DENY** Defendant's motion to strike or dismiss the non-statutory aggravating factors in the Notice.

**B.  The Statutory and Non-Statutory Factors Listed in the Notice are not Unconstitutionally Vague, Overbroad and Duplicative.**

Defendant claims the sentencing allegations in the Indictment, as well as the statutory and non-statutory aggravating factors charged in the Notice, should be stricken because they fail to properly narrow the population of offenders upon whom the death penalty may be imposed, thereby

violating the Fifth and Eighth Amendments to the Constitution (Court File No. 167 at 9). The government argues Defendant's argument is incorrectly premised in part "on an assumption that each and every aggravating factor weigh in aggravation of punishment must alone serve to bring the defendant within an adequately narrowed class of eligible offenders in order to pass constitutional muster" (Court File No. 185 at 5). The government urges the Court to reject Defendant's claims as meritless.

To justify imposition of the death penalty, a statutory aggravating circumstance must genuinely narrow the class of persons eligible for the penalty and must reasonably justify imposition of a more severe sentence on the defendant in the case at bar as compared to others found guilty of the same crime. 21A Am. Jur. 2d. Criminal Law § 965 (2006) (citing *Zant v. Stephens*, 462 U.S. 862 (1983)). In order to pass constitutional muster, an aggravating factor must meet two requirements: first, it must not be overbroad; and second it may not be unconstitutionally vague. *Tuilaepa v. California*, 512 U.S. 967, 972 (1994); *Stringer v. Black*, 503 U.S. 222, 230-32 (1992). If a "sentencer fairly could conclude that an aggravating circumstance applies to every defendant eligible for the death penalty, the circumstance is constitutionally infirm," as it fails to narrow the class of persons eligible for the death penalty. *Arave v. Creech*, 507 U.S. 463, 474 (1993). To avoid classification as "overbroad," the aggravating factor or circumstance may not apply to every defendant convicted of a murder; it must apply only to a subclass of defendants convicted of murder. *Tuilaepa*, 512 U.S. at 972 (citing *Arave*, 507 U.S. at 474).

A statutory aggravating circumstance which is intended to be used in determining whether the death penalty should be imposed in a particular case, but which fails to furnish the sentencer with principled guidance in making the choice between death and a lesser penalty, is said to be

9

unconstitutionally vague. *Richmond v. Lewis*, 506 U.S. 40, 46 (1992). Second, in a "weighing" death penalty statute, such as the FDPA, where the aggravating and mitigating factors are balanced against each other, it is constitutional error for the sentencer to give weight to an unconstitutionally vague aggravating factor, even if other, valid aggravating factors are present. *Richmond*, 506 U.S. at 46 (citing *Stringer*, 503 U.S. at 229-32). A vague factor undermines the reliability of a sentencing decision by creating an unacceptable risk that the decision is random, arbitrary and capricious, in violation of the Eighth Amendment. *Tuilaepa*, 512 U.S. at 974-75; *Stringer*, 503 U.S. at 230-32.

As noted by the Supreme Court of the United States, because the "'proper degree of definition' of [aggravating] factors often 'is not susceptible of mathematical precision,' [a court's] vagueness review is quite deferential." *Tuilaepa*, 512 U.S. at 973. An aggravating factor required to render defendant eligible for death penalty is unconstitutionally vague if it does not possess some "common-sense core of meaning" that "criminal juries should be capable of understanding." *Tuilaepa*, 512 U.S. at 973; *United States v. Roman*, 371 F. Supp. 2d 36 (D.P.R. 2005). The Court is satisfied the sentencing allegations in the Indictment and the aggravating factors (both statutory and non-statutory) in the Notice possess a common-sense core of meaning that criminal juries are capable of understanding. Therefore, the Court rejects Defendant's argument the sentencing allegations and aggravating factors (both statutory and non-statutory) are unconstitutionally vague. The Court will now examine whether the statutory intent factors, the statutory aggravating factors and the non-statutory aggravating factors are overbroad.

### 1. *Statutory intent factors*

The Court finds the FDPA's mental culpability requirement sufficiently narrows the class of persons eligible for the death penalty and reasonably justifies the imposition of a more severe

sentence on Defendant compared to others found guilty of the crimes with which he is charged. The FDPA follows an acceptable method of narrowing the class of persons eligible for the death penalty. As described above, the FDPA broadly defines capital offenses and provides for narrowing by the petit jury's finding of aggravating circumstances at the penalty phase.

As the government's response points out, a number of other courts have also held the mental culpability requirement sufficiently narrows the class of persons eligible for the death penalty. *See United States v. Tipton*, 90 F.3d 861, 897-99 (4th Cir. 1996) (concluding that 21 U.S.C. § 848(n)(1) intent factors "focus the jury's attention upon the different levels of moral culpability that these specific circumstances might reasonably be thought to represent, thereby channeling jury discretion in the weighing process"); *United States v. Flores*, 63 F.3d 1342, 1371-72 (5th Cir. 1995) (holding that 21 U.S.C. § 848(n)(1) intent factors narrow the class of defendants eligible for death penalty and are constitutionally sound); *United States v. Cooper*, 91 F.Supp.2d 90, 96-97 (D.D.C. 2000) (concluding that FDPA's intent elements in § 3591(a)(2)(A)-(D) sufficiently narrow class of persons eligible for death penalty because many felony-murder crimes under 18 U.S.C. § 1111(a) would not meet FDPA intent standard); *United States v. Kaczynski*, 1997 WL 716487, at *17 (E.D. Cal. Nov. 7, 1997) ("[T]he intent requirement also performs a narrowing function by limiting the class of individuals against whom the death penalty can be imposed"); *United States v. Nguyen*, 928 F. Supp. 1525, 1539 (D. Kan. 1996) (FDPA narrows class of death-eligible defendants through use of mental state factors listed at 18 U.S.C. § 3591(a)(2)(A)-(D)).

To the extent Defendant argues the recitation of Defendant's mental state as aggravating factors warranting the imposition of the death penalty are duplicative and cumulative, the Court points out the well-settled fact that when a jury relies on an aggravating circumstance to impose the

death penalty which is the same as an element of the underlying offense, the sentence is not unconstitutional. *Lowenfield v. Phelps*, 484 U.S. 231, 246 (1988). "The aggravating circumstance may be contained in the definition of the crime or in a separate sentencing factor (or in both)." *Tuilaepa*, 512 U.S. at 972 (citing *Lowenfield*, 484 U.S. 244-46). Thus, the mere "fact that the penalty phase aggravating circumstance finding was duplicative [with an element of the underlying offense] did not make the sentence constitutionally infirm." *Buell v. Mitchell*, 274 F.3d 337, 369 (6th Cir. 2001) (citing *Lowenfield*, 484 U.S. at 246).

As discussed above, because the mental culpability factors are used to narrow the class of defendants eligible for the death penalty, these factors are necessary and do not unconstitutionally duplicate elements of the crime. *United States v. Jones*, 132 F.3d 232, 249 (5th Cir. 1998) ("The submission of the elements of the crime as an aggravating factor merely allowed the jury to consider the circumstances of the crime when deciding whether to impose the death penalty. Thus, the kidnapping was weighed only once by the jury during the penalty phase of the trial. Consequently, the repetition of the elements of the crime as an aggravating factor did not contradict the constitutional requirement that aggravating factors genuinely narrow the jury's discretion."); *United States v. McCullah*, 76 F.3d 1087, 1108 (10th Cir. 1996) (following *Lowenfield* to approve the government's use of "committed the offenses charged in the indictment" as a non-statutory aggravating factor, even though it restated elements of offenses); *Tipton*, 90 F.3d at 898 n.19 (noting that *Lowenfield* forecloses claim that repeating guilt-phase intent element as an aggravating factor is impermissibly duplicative); *Nguyen*, 928 F.Supp. 1525, 1539 (D. Kan. 1996) (alleging mental state factor is not impermissibly duplicative of element of crime).

    2.  *Statutory aggravating factors*

Additionally, the statutory aggravating factors narrow the class of persons eligible for the death penalty. The Indictment alleges three statutory aggravating factors, but the government intends to go forward with only two of the three (Court File No. 185 at 14). Since substantial planning and premeditation was not submitted to the grand jury in the Indictment (see discussion above), the Court need only consider whether the remaining two statutory aggravating factors are unconstitutionally broad: (1) causing a death during the commission of another crime; and (2) creating a grave risk of death to additional persons.

The United States Court of Appeals for the Sixth Circuit (the "Sixth Circuit") has already decided the first factor sufficiently provides a principled basis for distinguishing between those capital crimes which warrant the imposition of the death penalty and those which do not. In *Buell v. Mitchell*, 274 F.3d 337, 369 (6th Cir. 2001), the Sixth Circuit held that it was permissible to consider the kidnapping offense to "elevate murder to aggravated murder and make Buell eligible for the death penalty." Defendant's causing a death during the commission of another crime is not a situation where a person of ordinary sensibility could fairly characterize almost every murder as meeting this criteria. *See United States v. Llera Plaza*, 179 F. Supp.2d 444, 452 (E.D. Pa. 2001). Accordingly, the Court finds the fact that this murder occurred during the commission of other crimes, here kidnapping and carjacking, distinguishes Defendant's case from murder cases where the death penalty was not imposed.

The second aggravating factor to be considered by the Court has also been found to satisfy constitutional standards for specificity. *United States v. Minerd*, 176 F. Supp. 2d 424, 439 (W.D. Pa 2001)("grave risk of death" as mental culpability factor is not vague because "'grave' has a common sense meaning which would help the jury in making its decision"); *United States v.*

*McVeigh*, 944 F. Supp. 1478, 1490 (D.Colo. 1996). Again, because this factor requires Defendant to have subjected additional persons (other than the murder victim) to a "grave risk of death," this factor also narrows the class of persons eligible for the death penalty. As such, the Court is not persuaded by Defendant's argument and will not grant his motion on this ground.

### 3. *Non-statutory Aggravating Factors*

Defendant alleges the non-statutory aggravating factors relating to Defendant's alleged escape attempt and future dangerousness listed in the Notice are unconstitutional. Defendant argues his alleged conduct in the escape attempt does not "in itself" constitute conduct that could merit the death penalty because it did not result in the death of another person and is not relevant to Defendant's alleged murder of Guy Luck. Defendant argues the attempted escape factor "therefore fails to describe conduct which narrows the population of offenders whose increased culpability merits the death penalty."

Non-statutory aggravating factors do not need to result in the death of another person or be relevant to the charged conduct to be suitable for consideration in the penalty phase of a death penalty trial. *United States v. Cisneros*, 363 F. Supp. 2d 827 (E.D. Va. 2005) (non-statutory aggravating factor alleging that capital murder defendant attempted to obstruct justice by threatening to kill potential witnesses was not cumulative of other factors, and thus was not unconstitutionally duplicative). In *Cisneros*, a federal death penalty case, the court ruled the defendant's unadjudicated conduct, including alleged sales of guns, ammunition, or cocaine to informant or undercover agent, and officers' discovery of cocaine, tools of drug trade, and ammunition in defendant's residence, could be included as a non-statutory aggravator of defendant's "pattern of criminal activity;" government gave adequate notice of intent to examine that conduct at trial, it was relevant to pattern

14

of criminal activity, it was not more prejudicial than probative, confusing, or misleading, and court would instruct jury that conduct must be proven beyond reasonable doubt. *Cisneros*, 363 F. Supp. 2d at 837. The *Cisneros* court held the words "pattern of criminal activity" had a common sense core of meaning of unlawful conduct over the age of eighteen and thus a non-statutory aggravator under the FDPA encompassing defendant's adult criminal activity was not rendered unconstitutionally vague by inclusion of language "including, but not limited to, the following" in describing defendant's pattern of criminal activity. *Id*. Therefore, the court allowed the government to introduce evidence concerning the defendant's prior criminal activity "so long as it [was] relevant to the determination of a pattern of criminal activity as an adult justifying the death penalty and its probative value outweighs the danger of creating unfair prejudice, confusing the issues or misleading the jury." *Id.* (citing 18 U.S.C. § 3593(c) and *Zant v. Stephens*, 462 U.S. 862, 888 (1983)).

The Court is persuaded by the *Cisneros* analysis. First, the FDPA authorizes the government to present future dangerousness as a non-statutory aggravating factor. *United States v. Allen*, 247 F.3d 741, 788 (8th Cir. 2001), *vacated and remanded on other grounds*, 536 U.S. 953 (2002). "Future dangerousness," by its own terms, has a common sense core of meaning jurors are capable of understanding. Therefore it is not unconstitutionally vague. Here, as in *Cisneros*, the government has provided notice of its intent to examine Defendant's alleged conduct in the escape attempt and his future dangerousness at trial. Defendant's propensity to attempt escape is relevant to Defendant's future dangerousness.[4] *See Kelly v. South Carolina,* 534 U.S. 246, 253 (2002)("[t]o the extent that [the state court] thought that '[e]vidence that [the defendant] took part in escape attempts and carried a shank . . . is not the type of future dangerousness evidence contemplated by

---

[4]It is also relevant to Defendant's consciousness of guilt.

15

*Simmons* [*v. South Carolina*, 512 U.S. 154 (1994)],' . . ., it overlooked that evidence of violent behavior in prison can raise a strong implication of 'generalized . . . future dangerousness.'"). "A jury hearing evidence of a defendant's demonstrated propensity for violence reasonably will conclude that he presents a risk of violent behavior, whether locked up or free, and whether free as a fugitive or as a parolee." *Kelly*, 534 U.S. at 253-54.

Defendant argues the Court should strike these non-statutory aggravating factors because there are not relevant to the murder of Guy Jean Luck. Defendant's propensity for violence is an important and valid factor for the jury's consideration. An attempted escape is probative in that it shows consciousness of guilt. Further, evidence proving low rehabilitative potential demonstrated by failure to conform conduct to societal norms and lack of remorse are indicators, and thus evidence, of future dangerousness.[5] "Evidence of future dangerousness under *Simmons* is evidence with a tendency to prove dangerousness in the future; its relevance to that point does not disappear merely because it might support other inferences or be described in other terms." *Id.* at 254.

As the risk of future dangerousness narrows the pool of eligible persons for the death penalty, it is not overbroad. The Court will instruct the jury that conduct must be proven beyond reasonable doubt. As such, the Court is satisfied the government's inclusion of the non-statutory factors in the Notice is constitutionally permissible and relevant to the jury's consideration of imposing the death penalty on Defendant.

**C.    The Indictment and the Notice Provide Defendant With Constitutionally**

---

[5]By thus saying, the Court is not deciding *all* evidence relating to Defendant's future dangerousness will be admissible. The purpose of this memorandum is to explain why the Court is denying Defendant's motion to strike the non-statutory aggravating factors included in the Notice. The Court will reserve ruling on admissibility on specific evidence until the issue comes before the Court.

**Adequate Notice.**

Title 18 United States Code Section 3593(a)(2) requires the government to sign and file with the court, and serve on the defendant in a "reasonable time before trial" a notice "setting forth the aggravating factor or factors that the government, if the defendant is convicted, proposes to prove as justifying a sentence of death." Defendant alleges the Notice and the sentencing allegations in the Indictment "must be striken [sic] because they fail to provide the notice required by the Constitution and by 18 U.S.C. Section 3593(a)." (Court File No. 167, p. 21). Defendant argues the Notice is "almost wholly insufficient to apprise Mr. Taylor of the nature of the aggravating factors that the government intends to rely on to sentence him to death" (Court File No. 167, p. 22).

The Court finds absolutely no merit to Defendant's argument. "The FDPA and the Constitution require that the defendant receive adequate notice of the aggravating factor . . . not notice of the specific evidence that will be used to support it." *Higgs*, 353 F.3d at 325. Notice given to a defendant of the applicable aggravating factors in a death penalty case is not the same as notice of the specific evidence that the government intends to present at a sentencing hearing. *United States v. Battle*, 173 F.3d 1343, 1347 (11th Cir.1999). The government is not required to "spell out the evidence it intends to use during sentencing." *United States v. Grande*, 353 F. Supp. 2d 623, 636 (E.D. Va. 2005). Defendant argues the government's listing of the four intent factors provides no meaningful notice of the nature of the intent the government intends to prove. However, the Court believes the government's listing the intent factors in the Indictment and the Notice provides notice to Defendant as to which intent factors the government will be using. Any other conclusion defies logic.

Further, Defendant complains the "section 3592(c) 'statutory aggravating facts' listed in the

Indictment and the Notice provide no notice beyond a restatement of aggravators as they are set out in the statute." (Court File No. 167, p. 22). As that is all that is required, Defendant's argument on this point is again wholly without merit. Finally, Defendant complains the non-statutory factors, particularly relating to Defendant's failure to adapt his conduct to societal norms is insufficient, but cites no authority for his position. As such, the Court finds Defendant's argument is again without merit. The Notice filed by the government sufficiently apprises Defendant as to which factors the government intends to rely on in proving Defendant should be sentenced to death. Therefore, the Court reject's Defendant's arguments to the contrary.

> **D.** **The Non-Statutory Aggravating Factor Alleging Attempted Escape Does Not Deny Defendant the Presumption of Innocence.**

In a last ditch attempt to keep out evidence of Defendant's attempted escape, Defendant states the non-statutory "aggravator alleging attempted escape must be striken [sic] because its use denies the defendant the presumption of innocence to which he is entitled." (Court File No. 167, p. 23). Defendant argues the jury will lose the presumption of innocence in the jury's eyes once they reach the penalty phase because they have already decided he is guilty during the previous phase of the trial. Ample Supreme Court precedent supports the admission of uncharged criminal conduct in the penalty phase of a capital case. *See, e.g., Tuilaepa*, 512 U.S. at 976 (allowing, in the penalty phase, defendant's prior criminal activity for use or threatened used of violence); *Williams v. New York*, 337 U.S. 241, 244 (1949)(allowing evidence in the penalty phase of numerous, uncharged burglaries); *United States v. Watt*, 519 U.S. 148, 155-56 (1997)(upholding constitutionality of the admission of acquitted conduct at sentencing phase). The Court is confident its instructions to the jury will make clear the government's burden to prove beyond a reasonable doubt the conduct alleged in the non-statutory factors. The Court declines to rule on the admissibility of evidence on

this issue until the matter is actually before the Court. As such, the Court will **DENY** Defendant's request to strike the non-statutory aggravating factor(s) pertaining to Defendant's attempted escape.

IV.     **CONCLUSION**

For the reasons stated above, the Court will **GRANT IN PART** and **DENY IN PART** Defendant's motion (Court File No. 166). The Court will strike from the Notice the additional statutory aggravating factor alleging substantial planning and premeditation. The Court will not strike any of the sentencing allegations in the Indictment or any other of the aggravating factors in the Notice.

An order shall enter.

**/s/**
**CURTIS L. COLLIER**
**CHIEF UNITED STATES DISTRICT JUDGE**