UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| ) | No. 1:04-CR-160 |
| v. ) | |
| ) | Chief Judge Curtis L. Collier |
| ) | |
| REJON TAYLOR ) | |

# MEMORANDUM

Before the Court are Defendant Rejon Taylor's ("Defendant") "Motion in Limine Relative to Defendant Taylor's Exercise of His Fifth Amendment Right" and "Motion in Limine as to Defendant's Arrest for Credit Card Theft of Robert Westlake"(Court File Nos. 215, 217). Defendant filed a memorandum in support of each of the motions (Court File Nos. 216, 218) and the government responded to the motions (Court File No. 241). For the reasons stated below, the Court will **DENY** Defendant's motions.

## I. STANDARD OF REVIEW

Fed. R. Evid. 404(b) ("Rule 404(b)") is "a rule of inclusion rather than exclusion." *United States v. Blankenship*, 775 F.2d 735, 739 (6th Cir.1985). Rule 404(b) states:

> Other crimes, wrongs, or acts. (b) Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

The United States Court of Appeals for the Sixth Circuit (the "Sixth Circuit") in *United States v. Merriweather*, 78 F.3d 1070 (6th Cir. 1996), summarized the appropriate procedure with respect to evidence offered under Rule 404(b) as follows:

> Upon objection by the defendant, the proponent of the evidence, usually the government, should be required to identify the *specific* purpose or purposes for which the government offers the evidence of "other crimes, wrongs, or acts." By so requiring, we do not mandate hypertechnicality. . . . [T]he government's purpose in introducing the evidence must be to prove a fact that the defendant has placed, or conceivably will place, in issue, or a fact that the statutory elements obligate the government to prove.
>
> After requiring the proponent to identify the specific purpose for which the evidence is offered, the district court must determine whether the identified purpose, whether to prove *motive* or *intent* or *identity* [or] some other purpose, is "material"; that is, whether it is "in issue" in the case. If the court finds it is, the court must *then* determine, before admitting the other acts evidence, whether the probative value of the evidence is substantially outweighed by the danger of unfair prejudice under [Federal Rule of Evidence] 403. If the evidence satisfies Rule 403, then, after receiving the evidence, the district court must "clearly, simply, and correctly" instruct the jury as to the *specific* purpose for which they may consider the evidence.

78 F.3d at 1076-77 (emphasis in original). Rule 404(b) prohibits only the introduction of acts which are offered to show criminal propensity or a conformity with past criminal activity. *United States v. Ushery*, 968 F.2d 575, 580 (6th Cir.1992).

The Rule 404(b)/403 analysis must be conducted on the record. To admit evidence under Rule 404(b) for one of the permissible purposes, (1) there must be sufficient proof for the jury to find that the defendant committed the prior act; (2) the prior act must not be too remote in time; (3) if used to prove intent, the prior offense must be similar to the charged offense; (4) the prior act must be introduced to prove a material issue in the case; and (5) the prior act's probative value must outweigh any prejudice. *United States v. Terry*, 729 F.2d 1063,1069 (6th Cir. 1984); *United States v. King*, 200 F.3d 1207, 1214 (9th Cir.1999).

## II. RELEVANT FACTS AND PROCEDURAL HISTORY

On October 18, 2006, the government filed a "Notice of Intent to Use 404(b) Material" (the "Notice," Court File No. 233). In pertinent part, the Notice states the 404(b) evidence[1] will consist primarily of the following:

> 1) Evidence related to burglaries the defendant committed within approximately one (1) year of the offenses charged in this indictment. The United States intends to call witnesses, specifically co-defendants Sir Jack Matthews and Joey Marshall, as well as law enforcement witnesses from Dekalb County, Georgia, law enforcement witnesses from Rockdale County, Georgia, victims of these burglaries such as Robert Westlake and the victim in the instant case's girlfriend, Stephanie Belcher, the defendant's former landlord at the Lake St. James Apartments in Rockdale County, and, perhaps, Best Buy employees from Dekalb County where the defendant attempted to use the credit cards he stole in one of the burglaries and a false identification to make purchases. The United States also intends to present physical evidence related to these burglaries recovered from the defendant's apartment at the Lake St. James Apartments in Rockdale County as well as a video-taped interview the defendant by a Rockdale County Sheriff's Deputy related to the Westlake burglaries.
>
> The United States submits that one theory under which the evidence related to the defendant's prior burglaries of the victim in the instant case is relevant is to show the motive for the killing as the defendant knew the victim was a potential witness against him in the prior burglaries.
>
> The United States submits that one theory under which the evidence related to burglaries of other victims is relevant is to show an absence of mistake or accident as the United States anticipates that co-defendants Matthews and Marshall will detail how the events that gave rise to the instant charges were different than those surrounding the other burglaries, e.g. the defendants did not wear masks and did carry guns on the day they killed Mr. Luke which differed from the previous burglaries.

Court File No. 233, pp. 2-3.

Defendant's motions in limine primarily relate to the admissibility of a video-taped interview

---

[1] In its notice of intent, the government stated "all of this evidence may well, in fact, be *res gestae* and not actually 404(b) material" but they decided "to file this notice out of an abundance of caution."

of Defendant performed by Rockdale County,[2] (Georgia) Sheriff's Office Detective M. Wolfe on August 12, 2003. Prior to the alleged murder of the victim Guy Luck ("the victim"), Georgia law enforcement authorities searched an apartment[3] in Conyers, Georgia and found numerous items which linked Defendant to a burglary of the victim's residence and the victim's identification records. Authorities also found some stolen credit cards in the name of "Robert Westlake" (Court File No. 218).

"Warrants for said offenses were issued against" Defendant and he was "advised of his 'Miranda Rights' and signed a written waiver of those rights." (Court File No. 216 at 1). At that point, Defendant began "giving a statement to the authorities but then changed his mind and exercised his rights refusing to continue answering questions and requested an attorney. The statement, as well as his exercise of his Fifth Amendment rights were videotaped" (id). According to Defendant's memorandum, the "vast majority of the interrogation was relative to the credit card fraud of Robert Westlake." (Court File No. 218 at 1). Further, "[a]t the time of the interrogation, Defendant was represented by counsel on the Westlake charges and adversary proceedings had been instituted" (id). Defendant filed the present two motions to exclude this video-taped interview and evidence of Defendant's arrest for credit card fraud/theft related to the Robert Westlake credit cards.

During the interview, Defendant denied "having anything to do with the apartment where the stolen items were found." (Court File No. 241, pp.1-2). According to the government, Defendant

> claimed he bought about five (5) credit cards in the name of Robert Westlake which were all on his person when the Dekalb County Sheriff's Office arrested him for

---

[2] Defendant's memorandum (Court File No. 216) states DeKalb County, Georgia law enforcement authorities conducted the videotaped interview.

[3] The government contends this apartment belonged to Defendant (Court File No. 241 at 1).

> attempting to use one (1) of the cards along with a fake identification card in Westlake's name with the defendant's picture on it. Also found in the defendant's apartment was another identification card in Westlake's name with co-defendant and potential witness for the United States Joey Marshall's picture on it.

(Court File No. 241, p. 2). In its response, the government states it "does not intend to introduce this video-taped interview in its case-in-chief" (id.). However, if Defendant takes the stand and testifies to something materially different from what he said in the interview, the government submits the use of the video-taped interview would be relevant on cross-examination on the issue of Defendant's credibility.

### III. DISCUSSION

Defendant argues allowing the government "to present the videotape in full to the jury with the Defendant choosing to exercise his Constitutional rights is highly prejudicial and would penalize him illegally for his exercise of said rights." (Court File No. 216 at 1). Defendant asserts, as a result, the government "should not be allowed to introduce that portion of the video recording" (id.). Defendant further states, since "Robert Westlake and the alleged actions of Defendant had no connection to the present charges against" Defendant, the purpose of introducing this videotape evidence would be "to prove the Defendant's character to commit fraudulent acts." (Court File No. 218 at 2). Finally, Defendant argues since he was represented by counsel when "interrogated concerning the Westlake charges, the videotaped statements should not be allowed due to the a [sic] violation of the Defendant's 5th Amendment right" (id at 3). Defendant cites no further legal authority for this position.

The Court finds Defendant's concerns regarding the admissibility of the video-taped interview are moot because the government does not intend to introduce this video-taped interview in its case-in-chief. Should Defendant take the stand and testify to something materially different

from what is contained in the videotape, the Court concludes the admission of the videotaped interview would be relevant to Defendant's credibility. As Defendant's exercise of his Fifth Amendment right captured on videotape would not be relevant to his credibility, this portion of the videotape is irrelevant and will not be shown to the jury.

To the extent Defendant's motion seeks to exclude *all* evidence of Defendant's arrest for the fraudulent use of a credit card belonging to Robert Westlake, the Court finds the government articulated a proper purpose for introducing the evidence through the testimony of other witnesses, both in its notice of intent to use the Rule 404(b) evidence (quoted above) and in the government's response (Court File No. 241 at 3-4). The government submits the circumstances surrounding the events which concluded in the victim's murder were different from the circumstances surrounding previous burglaries committed by Defendant and co-defendants Joey Marshall and Sir Jack Matthews ("co-defendants"). Defendant and co-defendants did not wear ski masks or carry weapons to the prior burglaries, but did so during the events which resulted in the Defendant's kidnapping and murdering the victim. Such evidence is relevant to show Defendant's absence of mistake, preparation and planning in the victim's kidnapping and murder.

Since the Court finds the articulated purpose for introducing the evidence related to Defendant's prior arrest for the fraudulent use of a credit card belonging to Robert Westlake is actually present and relevant to the case, the Court must determine whether the probative value of the evidence outweighs its potential prejudicial impact under Rule 403. The fact that Defendant and co-defendants Marshall and Matthews wore masks and armed themselves before going to the victim's house is highly probative of Defendant's absence of mistake, preparation and planning of the events which resulted in the victim's death.

In this case, the fact that the prior bad act (credit card theft) is completely different in nature

to those charged at present (kidnapping and carjacking resulting in death) weighs strongly against the potential of unfair prejudice. With proper instruction from the Court, a juror will not infer since Defendant committed the act of credit card fraud in the past that he has a propensity to carjack and kidnap a victim, resulting in death. Therefore, the Court finds the probative value of the evidence of the surrounding circumstances of Defendant's arrest for credit card theft of Robert Westlake outweighs the potential for prejudice.

## IV. <u>CONCLUSION</u>

For the reasons stated above, the Court will **DENY** Defendant's "Motion in Limine Relative to Defendant Taylor's Exercise of His Fifth Amendment Right" and "Motion in Limine as to Defendant's Arrest for Credit Card Theft of Robert Westlake"(Court File Nos. 215, 217)**.**

**/s/**
**CURTIS L. COLLIER**
**CHIEF UNITED STATES DISTRICT JUDGE**