UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

UNITED STATES OF AMERICA     )
          )
          )     No. 1:04-CR-160
v.          )
          )     Chief Judge Curtis L. Collier
          )
REJON TAYLOR     )

**<u>MEMORANDUM</u>**

Before the Court are two motions filed by defendant Rejon Taylor ("Defendant"), who seeks to preclude a penalty phase hearing or dismiss the notice of intent to seek the death penalty filed by the United States ("Government"). In the first motion, Defendant moves to declare the Federal Death Penalty Act, 18 U.S.C. §§ 3591-3598, unconstitutional (Court File No. 238). Defendant also filed a memorandum in support (Court File No. 239), and the United States ("Government") filed a response (Court File No. 296), to which Defendant filed a reply (Court File No. 308) and affidavit in support (Court File No. 309).

In the second motion, Defendant moves to declare the Federal Death Penalty Act unconstitutional because it deprives him of his constitutional protections under the Due Process Clause, the Confrontation Clause, and the Eighth Amendment (Court File No. 250). Defendant also filed a memorandum in support (Court File No. 251), to which the Government filed a response (Court File No. 290), to which Defendant filed a reply (Court File No. 310).

For the following reasons, the Court will **DENY** both motions (Court File Nos. 238, 250).

I.      **BACKGROUND**

The Government alleges: "On August 6, 2003, the defendant participated in the carjacking, kidnaping, and murder of Atlanta restaurant owner Guy Luck by abducting the victim at gunpoint from his home in Atlanta, forcing him into his own van, driving him against his will into Tennessee, and shooting him multiple times and killing him in Collegedale, Tennessee." (Court File No. 290).

A grand jury returned a superseding indictment (Court File No. 447) charging Defendant with

> (1) Carjacking Resulting in Death, in violation of 18 U.S.C. §§ 2119(3) and (2)(a) and (b);
> (2) Firearms Murder During and in Relation to Carjacking, 18 U.S.C. §§ 924(j)(1) and 2(a) and (b);
> (3) Kidnapping Resulting in Death, 18 U.S.C. §§ 1201(a)(1) and 2(a) and (b); and
> (4) Firearms Murder During and in Relation to Kidnapping, 18 U.S.C. §§ 924(j)(1) and 2(a) and (b).

The grand jury alleged several sentencing allegations in contemplation of the death penalty. The Government filed a notice of intent to seek the death penalty against Defendant, alleging various statutory and non-statutory aggravating factors and facts and evidence which support those aggravators as a basis for seeking the death penalty (Court File No. 123).

Two other defendants who were charged with Defendant have pleaded guilty (Court File Nos. 282, 284).


II.     STANDARD OF REVIEW

Statutes are presumed constitutional. *See INS v. Chadha*, 462 U.S. 919, 943 (1983). "An act of Congress ought not be construed to violate the Constitution if any other possible construction remains available." *NLRB v. Catholic Bishop of Chicago*, 440 U.S. 490, 500 (1979). "[A] statute must be construed, if fairly possible, so as to avoid not only the conclusion that it is unconstitutional

but also grave doubts upon that score." *Rust v. Sullivan*, 500 U.S. 173, 191 (1991). Defendant, as the party challenging the statute, bears the burden of demonstrating its unconstitutionality. *Heller v. Doe*, 509 U.S. 312, 320 (1993); *see Lujan v. G & G Fire Sprinklers*, 532 U.S. 189, 198 (2001).

## III. DISCUSSION

### A. The Federal Death Penalty Act ("FDPA")

To be eligible for the death penalty under the FDPA, 18 U.S.C. §§ 3591-3598, a defendant must first be found guilty of a crime for which a sentence of death is provided. 18 U.S.C. § 3591(a)(2). All four counts of the superseding indictment are death penalty eligible crimes. *See* 18 U.S.C. §2119(3) (Count One); 18 U.S.C. § 924(j)(1) (Counts Two and Four); 18 U.S.C. § 1201(a) (Count Three).

After finding a defendant guilty of a death penalty eligible crime, a jury must make several findings before it may consider imposing the death penalty. This procedure is well-summarized in *United States v. Nguyen*, 928 F. Supp. 1525, 1532 (D. Kan. 1996):

> First, the jury must determine whether [the defendant] had the requisite intent to commit the death eligible offense. 18 U.S.C. § 3591(a). If the jury unanimously finds beyond a reasonable doubt that intent is established, it moves to the next step in the penalty process. If the jury does not so find, the deliberations are over and the death penalty may not be imposed.
>
> Assuming the jury finds the requisite intent, it must then consider the statutory aggravating factors alleged by the government in its notice to seek the death penalty. The statutory aggravating factors from which the government may choose are listed at 18 U.S.C. §§ 3592(c)(1)-[(16)]. The jury must determine whether the government has proven at least one of the statutory factors alleged beyond a reasonable doubt. 18 U.S.C. § 3593(c). If the jury unanimously so finds, it moves to the next step of the penalty process. If not, the deliberations are over and the death penalty may not be imposed. 18 U.S.C. § 3593(d).
>
> Assuming the jury finds at least one statutory aggravating factor, it must then

consider that factor or factors, plus "any other aggravating factor for which notice has been provided," 18 U.S.C. § 3593 (d) ("non-statutory aggravating factors"), and weigh them against any mitigating factors to determine whether the death penalty is appropriate. 18 U.S.C. § 3593(e). Non-statutory aggravating factors, like their statutory counterparts, must be unanimously found by the jury beyond a reasonable doubt, while mitigating factors need only be established by a preponderance of the evidence. Further, any juror persuaded that a mitigating factor exists may consider it in reaching a sentencing decision; unanimity is not required. 18 U.S.C. § 3593(c),(d).

*See also Jones v. United States*, 527 U.S. 373, 376-78 (1999).

The FDPA states "the jury . . . shall consider whether all the aggravating factor or factors found to exist sufficiently outweigh all the mitigating factor or factors found to exist to justify a sentence of death. 18 U.S.C. § 3593(e). "Based upon this consideration, the jury by unanimous vote . . . shall recommend whether the defendant should be sentenced to death, to life imprisonment without possibility of release or some lesser sentence." *Id.* If the jury recommends the defendant be sentenced to death or life imprisonment without possibility of release, the Court must then sentence the defendant accordingly. 18 U.S.C. § 3594.

**B.      Defendant's Motion to Declare the FDPA Unconstitutional**

Defendant contends the FDPA is unconstitutional and provides 14 arguments in support. The Court will examine each argument in turn.

> *1.      "The federal death penalty operates in an unconstitutionally arbitrary and capricious manner because it is so rarely sought or imposed."*

Defendant alleges 15.9% of defendants who the Government sought a death sentence for between 1998 and June 2006 were sentenced to death. Referring to the numerous concurring opinions in *Furman v. Georgia*, 408 U.S. 238, 309-10 (1972), Defendant asserts the United States Supreme Court found "arbitrary and capricious a system in which fewer than 20% of defendants charged with capital crimes were actually sentenced to death." (Court File No. 239, pp. 4-5 (citing

4

*Furman*, 402 U.S. at 436)). As the Government points out in its response, although the concurring opinions offer different analyses, the Supreme Court found where discretion is afforded to a sentencing body, that discretion must be suitably directed and limited to particularized circumstances of the crime and the defendant to avoid the imposition of the death penalty on a capriciously selected group of offenders. *McCleskey v. Kemp*, 481 U.S. 279, 302, 307 (1987); *Gregg v. Georgia*, 428 U.S. 153, 189, 199 (1976).

In *Furman*, the Supreme Court found the state death penalty statutes of two states unconstitutional because they provided no such guidance or direction to the sentencing body. The basis was not that the prosecution has elected to pursue the death penalty against some criminals and not others. The Supreme Court did not hold inflicting the death penalty is *per se* unconstitutional. *See also Gregg*, 428 U.S. at 188. *Furman* prohibited "sentencing procedures that created a substantial risk that [the death penalty] would be inflicted in an arbitrary and capricious manner." *Id.* Defendant alleges the federal death penalty is unconstitutional because the Government seeks it so infrequently. But *Furman* only concerns "sentencing procedures" that lead to arbitrary and capricious use of the death penalty. "*Furman* mandates that where discretion is afforded a sentencing body on a matter so grave as the determination of whether a human life should be taken or spared, that discretion must be suitably directed and limited so as to minimize the risk of wholly arbitrary and capricious action." *Id.* at 189.

The FDPA procedure (outlined above) sufficiently focuses the sentencing body (the jury) on the defendant and his crime. The Court is persuaded by the reasoning in *United States v. Hammer*, 25 F.Supp.2d 518 (M.D. Pa. 1998):

> The mere fact that the government has only sought the death penalty in a de minimis number of murder cases involving federal inmates is not sufficient to demonstrate

that the prosecution of [the defendant] is arbitrary and capricious. More is required. [The defendant] must show that the government is seeking the death penalty for an impermissible reason, such as race, religion, or in retaliation for exercising his right to trial by jury.

In support of his argument, Defendant also cites 16 cases from across the country in which defendants were accused of multiple killings but the Government did not seek the death penalty. He also alleges he is the only defendant in the Eastern District of Tennessee's Southern Division (Chattanooga) against whom the Government has sought the death penalty since the FDPA took effect in 1994, and the Government has no protocol for deciding which state cases should be prosecuted federally, and therefore his case is an example of the arbitrary and capricious application of the FDPA.

The Court need not evaluate whether the cases cited by Defendant show the Government's decision to seek a death sentence against him was arbitrary and capricious. *Furman* did not hold it unconstitutional to have some arbitrariness in the Government's selection of who to seek a death sentence against. The Government has "broad discretion" in enforcing federal law. *United States v. Armstrong*, 517 U.S. 456, 464 (1996). That the Government brings so few death penalty cases does not automatically lead to the conclusion the Government's decisions are arbitrary and capricious. The Government proposes an alternative plausible explanation: the Government chooses carefully which defendants to seek a death sentence against. Defendant has not overcome his burden against that reasonable inference.

Accordingly, Defendant's challenge to the federal death penalty based on *Furman* is without merit.

2.    *"The absence of a principled basis for distinguishing cases in which the federal death penalty is imposed from those in which it is not imposed renders the federal death penalty unconstitutional."*

Defendant states the Supreme Court's decision in *Eddings v. Oklahoma*, 455 U.S. 104, 112 (1982), requires capital punishment to be "imposed fairly, and with reasonable consistency, or not at all." He argues federal juries impose the death penalty without consistency and predictability and there is also no consistency or predictability in the Government's decisions to accept lesser pleas by some defendants. Defendant offers a two-page list of cases intended to show there is no discernable basis for why a relatively few defendants receive death sentences while most do not.

Defendant's argument is essentially a repeat of his first argument. *Eddings*, like *Furman*, is concerned with fair and consistent *sentencing*. Defendant does not argue the FDPA has unfair or inconsistent procedures, and he cites no cases supporting his contention the FDPA lacks a "principled basis for distinguishing cases" in which the death penalty will be sought from those in which it is not. Rather, Defendant emphasizes the effect of the FDPA, which is an unavailing argument. Inconsistent results are not unconstitutional. *McCleskey v. Kemp*, 481 U.S. 279, 307 n.28 (1987). "Numerous legitimate factors may influence the outcome of a trial and a defendant's ultimate sentence, even though they may be irrelevant to his actual guilt." *Id.*

It would be almost impossible for the list of cases presented by Defendant to contain enough details to explain the sentences each defendant received. There is no readily apparent basis for distinguishing among the cases, and sometimes there may not actually be a basis. But the Constitution requires fair and consistent sentencing proceedings, and Defendant has not shown the FDPA violates that requirement.

3.       *"The federal death penalty violates the Constitution because it is sought and imposed on the invidious basis of race and the irrational basis of geography."*

Based upon a Department of Justice (the "DOJ") study of how the federal death penalty has

been administered from 1998 until the summer of 2000 performed by the DOJ in September 2000 and updated in June 2001 (the "2000 Survey" and the "2001 Supplement"), Defendant contends the FDPA is "disproportionately sought against minority-group defendants." (Court File No. 239 at 8). Defendant asserts the "death penalty is irremediably [sic] racist as practiced in the United States." The only case law cited in support of this contention is *McCleskey v. Kemp*, 481 U.S. 279, 309 (1987), in which the Supreme Court referenced the Baldus study of Georgia sentencing patterns in deciding the study failed to establish that any of the decision makers in the defendant's case acted with discriminatory purpose in violation of the Equal Protection Clause.

In *McCleskey*, the Supreme Court pointed out "[e]ven Professor Baldus does not contend that his statistics *prove* that race enters into any capital sentencing decisions or that race was a factor in [the defendant]'s particular case." 481 U.S. at 308 (emphasis in original). After acknowledging there is some risk of racial prejudice influencing decisions in a criminal case, the Supreme Court noted there are "similar risks that other kinds of prejudice will influence other criminal trials" and the proper question is "at what point that risk becomes constitutionally unacceptable." *Id.* at 308-09. The Supreme Court discussed the many safeguards designed to minimize racial bias in the process and concluded "[a]t most, the Baldus study indicates a discrepancy that appears to correlate with race. Apparent disparities in sentencing are an inevitable part of our criminal justice system." *Id.* at 309-13. As a result, the Supreme Court found the study did not indicate a constitutionally significant risk of racial bias affecting Georgia's capital-sentencing process, and thus, did not establish a violation of the Eighth Amendment.

The 2000 Survey and the 2001 Supplement present a series of statistics regarding the federal death penalty process that are broken down by time period, participants in the decision-making

process (U.S. Attorneys, the Review Committee, and the Attorney General), and by the racial or ethnic groups of defendants and victims. *See* 2000 Survey at 6. The survey found "no evidence of bias against racial or ethnic minorities" in the process, but its authors made several recommendations aimed at "promot[ing] public confidence in the process's fairness." 2001 Supplement at 4.

To prevail on an equal protection claim, Defendant must show both "that the decision-makers in *his* case acted with discriminatory purpose" and that the purposeful discrimination had "'a discriminatory effect' on him." 481 U.S. at 292. The results of the 2000 Survey and 2001 Supplement referenced by Defendant are similar in nature to those published in the Baldus study. However, "[s]tatistics at most may show only a likelihood that a particular factor entered into some decisions." *Id.* at 309. Defendant makes no further attempt to show the decision-makers in *his* case acted with a discriminatory purpose or to show the purposeful discrimination had a discriminatory effect on him. The Government contends the decision to seek a death sentence is based on a formal protocol, starting at the district level and continuing through multiple steps to the Attorney General of the United States, who makes the final decision. The protocol prohibits bias based on characteristics such as race or ethnic origin, as is noted in the studying showing the racial disparities, and most decision-makers in the process are unaware of defendants' race. Defendant contends there is no protocol for the decision of the Government to prosecute a case that would otherwise be prosecuted in state court (Court File No. 309). This absence does not, however, show any indication the Government chose to prosecute Defendant because of a discriminatory reason. Defendant has made no attempt to show there was a discriminatory reason.

In the context of capital sentencing, statistics about the general operation of a death penalty scheme are insufficient to support an inference of discriminatory purpose. *Id.* at 292-99. In

accordance with the reasoning in *McCleskey*, where the discretion that is fundamental to our criminal process is involved, the Court declines to "assume that what is unexplained is invidious." *Id*. at 313.

> 4.     *"Under the Federal Death Penalty Act, the statutory aggravating factors and mental culpability requirements are sentencing determinations, not elements of the capital offense. Accordingly, in light of* Ring v. Arizona*, 536 U.S. 584 (2002), the Act is unconstitutional."*

Defendant argues the FDPA is premised on the now-invalidated conclusion of *Walton v. Arizona*, 497 U.S. 639, 648 (1990), that aggravating factors under a death penalty scheme are sentencing considerations, not elements of the offense. He contends the FDPA is unconstitutional in light of *Ring v. Arizona*, 536 U.S. 584 (2002), because it allows a prosecutor, rather than grand jury, to charge elements of a capital offense and because the information in sentencing hearings is not subject to the Federal Rules of Evidence ("FRE"). Defendant contends Congress would not have excepted sentencing hearings from the FRE if it intended for the aggravating factors to be part of the offense.

In *Ring*, the Supreme Court held aggravating factors necessary to impose a death sentence must be found by a jury. *Id.* at 609. Based on *Ring*, the Sixth Circuit requires aggravating factors to be found unanimously by a jury because they are elements of the murder offense. *Davis v. Mitchell*, 318 F.3d 682, 687 (6th Cir. 2003); *see also United States v. Sampson*, 486 F.3d 13, 21 (1st Cir. 2007) ("Supreme Court precedent now firmly establishes that the mental culpability and aggravating factors required by the FDPA must -- in addition to being included in the government's notice to seek the death penalty -- be presented to a grand jury, charged in the indictment, and proved beyond a reasonable doubt."). The fact that the FDPA defines the factors as sentencing considerations rather than elements of the offense does not render the statue facially

unconstitutional. The FDPA allows a jury to consider aggravating factors and therefore does not violate *Ring*. *See* 18 U.S.C. § 3591(c)). "The statute simply is silent with respect to the function of the grand jury. It thus is not rendered facially unconstitutional by *Ring*." *Sampson*, 486 F.3d. at 21; *accord United States v. Brown*, 441 F.3d 1330, 1367 (11th Cir. 2006), *cert. denied*, 127 S. Ct. 1149 (2007); *United States v. Allen*, 406 F.3d 940, 949 (8th Cir. 2005), *cert. denied*, 127 S. Ct. 826, (2006); *United States v. Barnette*, 390 F.3d 775, 788-90 (4th Cir. 2004), *vacated on other grounds*, 546 U.S. 803 (2005); *United States v. Robinson*, 367 F.3d 278, 290 (5th Cir. 2004).

If Defendant is convicted of a death-eligible offense, the FDPA mandates the Court "conduct a separate sentencing hearing to determine the punishment to be imposed." § 3593(b). At the sentencing hearing, the parties can present "information" on "any matter relevant to the sentence, including any mitigating or aggravating factor permitted or required to be considered." § 3593(c). The FRE do not apply at the sentencing hearing. *Id.* Defendant argues the non-applicability of the FRE violates his constitutional rights. The Government contends the evidentiary standard for the FDPA is constitutional.

The United States Court of Appeals for the Second Circuit addressed this issue and rejected a similar claim in *United States v. Fell*, 360 F.3d 135 (2d Cir. 2004). The court noted the FRE are not constitutionally mandated. *Id.* at 138. Although the FRE do not apply to FDPA sentencing proceedings, the FDPA does not alter district courts' "inherent obligation to exclude evidence the admission of which would violate a defendant's Constitutional Rights." *Id.* The court reversed a lower court's decision which had found the FDPA standard unconstitutional. The United States Court of Appeals for the Eighth Circuit has also rejected a challenge similar to Defendant's, relying on the reasoning in *Fell*. *United States v. Lee*, 374 F.3d 637, 648 (8th Cir. 2004)

Defendant has not cited any case directly supporting his position, and the Court finds *Fell* and *Lee* persuasive. There are constitutional protections protecting Defendant and allowing him opportunity to respond to Government evidence. *See Skipper v. South Carolina*, 476 U.S. 1, 8 (1986); *Gardner v. Florida*, 430 U.S. 349, 358 (1977). Congress can set aside rules of evidence not require by the Constitution. *Dickerson v. United States*, 530 U.S. 428, 437 (2000). Therefore, the inapplicability of the FRE does not render the sentencing proceeding unconstitutional.

Defendant also argues that allowing one jury to determine both guilt and penalty violates due process because the jurors are too focused on evidence of guilt than on mitigating factors. This argument is unpersuasive. The Court presumes juries follow the jury instructions, *Marshall v. Lonberger*, 459 U.S. 422, 438 n.6 (1983), which will require them to take mitigating factors into account.

> 5. *"The Federal Death Penalty Act violates the Fifth, Sixth, and Eighth Amendments to the Constitution because the sentencing scheme is so incomprehensible that it deprives the jury of the ability to make a reasoned and informed choice between a sentence of death and a sentence of life imprisonment."*

Defendant argues jurors often misunderstand jury instructions and sentencing concepts necessary to properly reaching a decision in capital punishment cases. He contends a jury instructed pursuant to FDPA cannot make a reasoned and informed choice between life and death, so the FDPA is unconstitutional. The Supreme Court has held jury instructions in a death penalty case are constitutionally deficient if there is a "reasonable likelihood" they will mislead a jury into deciding on a death sentence. *Boyde v. California*, 494 U.S. 370, 380 (1990). It is too early to know what the jury instructions will look like if there is a sentencing phase, but there is no reason to think the instructions will be too incomprehensible for a jury to understand.

> If the case at bar proceeds to a sentencing phase, counsel for the defendants and counsel for the government will have the opportunity to participate fully in the process of formulating the instructions which will frame the jury's deliberations. There is no reason to believe that the jury will find the collaborative handiwork of court and counsel to be incomprehensible.

*United States v. Plaza*, 179 F. Supp. 2d 444, 450 (E.D. Pa. 2001). The Court agrees with *Plaza*, and rejects Defendant's speculative contention the jury instructions for sentencing are constitutionally incomprehensible.

> 6.    *"The Federal Death Penalty Act violates the Eighth Amendment to the Constitution because it fails to constitutionally narrow the class of persons eligible for the death penalty."*

Defendant claims the FDPA violates the Eighth Amendment because it fails to narrow the class of persons eligible for the death penalty. A capital sentencing scheme must "genuinely narrow the class of persons eligible for the death penalty and must reasonably justify the imposition of a more severe sentence on the defendant compared to others found guilty of murder." *Zant v. Stephens*, 462 U.S. 862, 877 (1983). The narrowing function may be accomplished in either of two ways: "the legislature may itself narrow the definition of capital offenses . . . so that the jury finding of guilt responds to this concern, or the legislature may more broadly define capital offenses and provide for narrowing by jury findings of aggravating circumstances at the penalty phase." *Lowenfield v. Phelps*, 484 U.S. 231, 246 (1988). As outlined above, the FDPA follows the second approach.

By imposing the requirement that at least one aggravating factor be found, the FDPA satisfies the constitutional requirement that it narrow the class of persons eligible for death penalty. *United States v. Cooper*, 91 F.Supp.2d 90, 97 (D.D.C. 2000) ("[e]ven if the statutory intent elements did not narrow the class of persons eligible to receive the death penalty, narrowing is nonetheless

13

accomplished by the requirement that the jury find beyond a reasonable doubt the existence of at least one statutory aggravating factor) (referencing *Zant*, 462 U.S. at 878). "Under the Constitution, what is required to narrow the class of persons eligible at the sentencing stage is that the statutory aggravating factors enable a jury to make an 'individualized determination on the basis of the character of the individual and circumstances of the crime.'" *Id.* The Court finds the statutory aggravating factors comport with this requirement. *See also Sampson*, 486 F.3d at 24 ("the FDPA fully meets the requirements of guided discretion, suitably directing and limiting the leeway afforded to the decisionmakers.").

       7.    *"The Federal Death Penalty Act unconstitutionally authorizes the government to allege non-statutory aggravating factors."*

Defendant argues allowing prosecutors to choose non-statutory aggravating factors for use at the penalty phase constitutes an unconstitutional delegation of legislative authority, thereby also rendering the FDPA unconstitutional in all cases. In *United States v. Tipton,* 90 F.3d 861, 895 (4th Cir. 1996), the Fourth Circuit rejected the contention that delegating authority to prosecutors to introduce non-statutory aggravating factors violates the principle of separation of powers. Congress can legislate in broad terms, leaving discretion as to implementation to other branches, as long as Congress sets out an "intelligible principle" to guide that discretion. *United States v. Davis*, 904 F. Supp. 554 (E.D. La. 1995) (citing *J.W. Hampton, Jr. & Co. v. United States*, 276 U.S. 394, 410 (1928); *Touby v. United States*, 500 U.S. 160 (1991)).

The FDPA sets forth intelligible principles to guide a prosecutor's discretion in designating additional nonstatutory aggravating factors. The statutory list of aggravating and mitigating factors focuses on circumstances of the crime and the character of the offender, including his past criminal history, his capacity and relative culpability in the offense. *Davis*, 904 F. Supp. at 559. Proposed

nonstatutory aggravating factors should be consistent with the type and severity of the statutory factors. *Id.* "The requirement of pretrial notice to the defendant and judicial review of the relevancy, reliability and constitutionality of proposed nonstatutory factors provide additional checks on the prosecutor's discretion." *Id.* (citing *Pretlow*, 779 F.Supp. 758, 766-67 (D.N.J. 1991)). Therefore, the FDPA's delegation of authority is proper.

> 8. *"The Federal Death Penalty Act violates the Fifth and Eighth Amendments to the Constitution because it fails to provide for meaningful appellate review."*

Defendant argues the FDPA violates the Fifth and Eighth Amendments by only providing for appellate review if the defendant requests it and files a timely notice of appeal. Because a defendant who has just been convicted "may be incredibly discouraged, ashamed, [and] hopeless," Defendant argues the "evolving standard of decency" requires mandatory appellate review (Court File No. 239, pp. 20-21).

The FDPA provides for appellate review of a death sentence upon the filing of a notice of appeal by the defendant. 18 U.S.C. § 3595(a). The Court of Appeals must review the entire record, including the evidence submitted during the trial, the information submitted during the sentencing hearing, the procedures employed in the sentencing hearing, and the special findings returned by the jury. 18 U.S.C. § 3595(b). Defendant argues the lack of a mandatory appeal is unconstitutional. While the Supreme Court indicated in *Gregg*, 428 U.S. at 198, that it favors automatic appeals in death penalty cases, it has not required mandatory appeals. *United States v. Cooper*, 91 F. Supp. 2d 90, 99 (D.D.C. 2000); *United States v. Davis*, 904 F. Supp. 554, 563 (E.D. La. 1995).

> 9. *"The Federal Death Penalty Act unconstitutionally restricts the mitigating evidence that the jury may consider."*

Defendant challenges 18 U.S.C. § 3593(f) as precluding him from raising various personal

15

characteristics as mitigating factors against the death penalty.  Section 3593(f) provides in pertinent part:

> . . . the court . . . shall instruct the jury that, in considering whether a sentence of death is justified, it shall not consider the race, color, religious beliefs, national origin, or sex of the defendant or of any victim and that the jury is not to recommend a sentence of death unless it has concluded that it would recommend a sentence of death for the crime in question no matter what the race, color, religious beliefs, national origin, or sex of the defendant or any victim may be.

Defendant argues "while Congress has authority to prohibit consideration of these factors in aggravation, it does not have the authority to prohibit their use as mitigation."  (Court File No. 239, p. 21.).  Defendant states to "prohibit a juror from considering race, for example, may lead him to conclude he may not consider real disadvantages that may have attended the defendant's life because of race" (*id.*).

The Supreme Court has stated race is among the factors that are "constitutionally impermissible or totally irrelevant to the sentencing process."  *Zant v. Stephens*, 462 U.S. 862, 885 (1983).  Although the FDPA seemingly prohibits the use of race and related factors, elsewhere the statute states "the finder of fact shall consider *any mitigating factor*, including . . . Other factors in the defendant's background, record, or character or any other circumstance of the offense that mitigate against imposition of the death sentence."  18 U.S.C. § 3592(a)(8) (emphasis added).  Thus, to the extent race or another factor need be considered, it may be.

Defendant's actual concern, based on the example he gives, seems to be not that the jury cannot consider race, but that the jury will not be able to consider the effects and experiences of race, or another factor, on his life.  This is not a valid concern because the statute does not prohibit such considerations.  The Fifth Circuit rejected an argument similar to Defendant's by explaining:

> although race per se is an irrelevant and inadmissible factor, the *effects* and

16

> *experiences* of race may be admissible. If a defendant can show that his life has been marked by discrimination or some other set of experiences, irrespective of whether the result, in part, of his race, then that properly might be admissable [sic] as relevant mitigating background or character evidence. But this is a far cry from using race in and of itself as a proxy for such a set of beliefs and experiences. Pigmentation does not define a person's character or background; the life that a person has led and the things that he has experienced do.

*United States v. Webster*, 162 F.3d 308, 356-57 (5th Cir. 1998) (emphasis in the original). Therefore, "the FDPA complies with the constitutional mandate that race be irrelevant during sentencing, while at the same time permitting the jury to hear mitigating evidence concerning the defendant's experiences resulting from his race, color, religion, national origin or gender, and the effect those experiences had on his life." *Cooper*, 91 F. Supp. 2d at 102.

> 10.     *"The Federal Death Penalty Act unconstitutionally gives the government the power to compel the accused to be sentenced by a jury against his will."*

The sentencing phase of a death penalty proceeding can be conducted by a judge alone instead of with a jury if the defendant makes a motion for such and the Government approves. 18 U.S.C. § 3593(b)(3). Defendant argues requiring Government approval violates the Eighth Amendment and "tip[s] the sentencing scales towards death." (Court File No. 239, p. 22 (citing *Witherspoon v. Illinos*, 391 U.S. 510, 521-22 n.20 (1968))). Defendant does not explain how requiring Government approval tips the scale towards death.

Section 3593(b)(3) is essentially the same as Fed. R. Crim. P. 23. The Supreme Court has upheld the requirement of Fed. R. Crim. P. 23 that a defendant entitled to a jury trial must be tried by a jury unless the defendant waives that right, the Government consents, and the court approves. *Singer v. United States*, 380 U.S. 24, 34 (1965). Similarly, although Defendant has the right to have his sentencing phase before a jury, he does not have an unconditional right to a trial or sentencing by a judge. *See United States v. Cooper*, 91 F. Supp. 2d 90, 103 (D.D.C. 2000).

11.    *"The Federal Death Penalty Act violates due process, Article III, and the Eighth Amendment by mandating that the judge impose a sentence of death if the jury so recommends."*

If the jury recommends a death sentence, the court is to impose such a sentence. 18 U.S.C. § 3594; *United States v. Ostrander*, 411 F.3d 684, 687 (6th Cir. 2005). Defendant argues this section of the FDPA violations due process, the Eighth Amendment, and Article III of the Constitution by depriving the court of judicial discretion. In support of this assertion, Defendant cites *Woodson v. North Carolina*, 428 U.S. 280, 305 (1976), which held unconstitutional a murder statute mandating a death sentence as punishment. As the Government points out, the FDPA does not impose a mandatory death sentence. The Court sees no reason this limit on its judicial discretion violates the Constitution.

12.    *"The remand provision of 18 U.S.C. Section 3595 (c)(2) violates the Double Jeopardy clause."*

In this argument, Defendant contends 18 U.S.C. § 3595(c)(2)(B) violates the Double Jeopardy Clause of the Fifth Amendment. Section 3595(c)(2) reads in pertinent part as follows:

> Whenever the court of appeals finds that
> (A) the sentence of death was imposed under the influence of passion, prejudice, or any other arbitrary factor;
> (B) the admissible evidence and information adduced does not support the special finding of the existence of the required aggravating factor; or
> (C) the proceedings involved any other legal error requiring reversal of the sentence that was properly preserved for appeal under the rules of criminal procedure,
> The court shall remand the case for reconsideration under section 3593 or imposition of a sentence other than death.

Defendant complains that a remand for a new hearing would violate double jeopardy in instances under (B) when the evidence adduced at the penalty phase did not support the necessary aggravating factor.

A similar argument was raised by the defendant in *Davis*, 904 F. Supp. at 562-63. The

statute provides that the case shall be remanded *either* for reconsideration under section 3593 *or* imposition of a sentence other than death. *See* 18 U.S.C. § 3595(c). The *Davis* court stated:

> The statute does not make clear, even using the disjunctive "or," in which situation under (A)-(C) a new hearing is appropriate and in which situation a sentence less than death is the remedy. The defendants are correct in that in the situation envisioned in (B) double jeopardy would in fact be violated if the appellate court elected to remand for a new hearing rather than remand for a sentence other than death. This court however is obliged to interpret the statute, admittedly unartfully drawn, in a manner that upholds its constitutionality. The statute does not compel an appellate court to violate double jeopardy and it will not be assumed that an appellate court would do so either.

904 F. Supp. at 562-63. The Court is persuaded by the logic of the *Davis* court and interprets the statute in such a way as to uphold its constitutionality.

> 13. *"The Federal Death Penalty Act deprives the defendant of a fair opportunity to rebut the government's evidence at the penalty phase of a capital case, in violation of the Fifth, Sixth, and Eighth Amendments."*

At the close of the sentencing phase, the Government opens the argument, the defendant is permitted to reply, and the Government may then reply in rebuttal. 18 U.S.C. § 3593(c). Defendant argues allowing the Government to have the final word "deprives a defendant of due process, prevents him from presenting an adequate defense, denies him effective assistance of counsel, and renders the sentencing unreliable" (Court File No. 239, p. 23) by creating a situation where Defendant cannot rebut the Government. The same section of the statute states, "The government and the defendant shall be permitted to rebut any information received at the hearing." Clearly, Defendant has the right to rebut the Government, and therefore Defendant is not deprived of his right to rebut the Government. This sequence of opening, reply, and rebuttal is traditional in American trial practice and provides the party with the burden of proof the opportunity to rebut. Here, the Government bears the burden of proof.

14.  *"The death penalty is under all circumstances cruel and unusual punishment; therefore, the government should be precluded from seeking the execution of Rejon Taylor."*

Defendant argues capital punishment violates the Eighth Amendment as cruel and unusual punishment.  The Eighth Amendment draws its boundaries from "the evolving standards of decency that mark the progress of a maturing society." *Trop v. Dulles*, 356 U.S. 86, 101 (1958).  According to the Supreme Court, those standards have not evolved in a way that makes the death penalty per se unconstitutional. *Davis*, 904 F. Supp. at 563-64 (citing *Gregg v. Georgia*, 428 U.S. 153 (1976)).

Because each of Defendant's grounds for declaring the FDPA unconstitutional is without merit, the Court will **DENY** Defendant's motion.

### C.    Defendant's Motion the FDPA Violates His Rights

Defendant moves the Court to preclude a jury from considering the death penalty on the grounds the FDPA deprives him of his constitutional protections under the Due Process Clause, the Confrontation Clause, and the Eight Amendment's prohibition against cruel and unusual punishment (Court File No. 250).  Defendant states the "argument and reasons for this motion were detailed" in the previously-discussed motion (Court File No. 251).  "However, because Section 3593(c) deals with jury and evidentiary issues, a separate motion and this supporting memorandum are also being filed on the issue." (*Id*.).  The arguments Defendant raises have been addressed in number 4 above, and this motion will be **DENIED** for the reasons stated there.

### III.    CONCLUSION

For the foregoing reasons, Defendant's motions to declare the death penalty unconstitutional and preclude a sentencing phase or dismiss the notice of intent to seek death will be **DENIED** (Court

File Nos. 238 & 250).

An Order shall enter.

/s/
**CURTIS L. COLLIER**
**CHIEF UNITED STATES DISTRICT JUDGE**