UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | No. 1:04-CR-160 |
| v. | ) | |
| | ) | Chief Judge Curtis L. Collier |
| REJON TAYLOR, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM**

Before the Court is the United States's ("Government") motion for a mental evaluation (Court File No. 434) and defendant Rejon Taylor's motion to strike the Government's motion (Court File No. 441). Magistrate Judge William B. Carter held a hearing on this matter and filed a report and recommendation ("R&R") recommending the Government's motion be granted in part and denied in part and Defendant's motion to strike be denied (Court File No. 459). Defendant filed objections to the R&R (Court File No. 460), and the Government filed an untimely response (Court File No. 503). Having conducted a de novo review of the material related to this matter, including a transcript of the hearing before Judge Carter (Court File No. 498, pp. 15-25), the Court agrees with the conclusions of the R&R. Therefore, for the following reasons, the Court will **OVERRULE** Defendant's objection (Court File No. 460), and **ADOPT** and **ACCEPT** the R&R (Court File No. 459).

**I.    RELEVANT FACTS, PROCEDURAL HISTORY, AND PARTIES' ARGUMENTS**

A superseding indictment (Court File No. 447) charges Defendant with:

(1) Carjacking Resulting in Death, in violation of 18 U.S.C. §§ 2119(3) and (2)(a)

> and (b);
> (2) Firearms Murder During and in Relation to Carjacking, 18 U.S.C. §§ 924(j)(1) and 2(a) and (b);
> (3) Kidnapping Resulting in Death, 18 U.S.C. §§ 1201(a)(1) and 2(a) and (b); and
> (4) Firearms Murder During and in Relation to Kidnapping, 18 U.S.C. §§ 924(j)(1) and 2(a) and (b).

The Government filed a notice of intent to seek the death penalty (Court File No. 123), and recently filed a superseding notice (Court File No. 511).

The Court entered a Revised Scheduling Order on November 10, 2006, which required the Government, if it wanted an independent evaluation of Defendant's mental health, to notify the Court and Defendant by September 17, 2007 (Court File No. 380, p. 3). The Order also required Defendant, if he intends to raise mental health as a defense or mitigating circumstance at trial, to notify the Court and the Government by November 2, 2007 (*id*.). Trial is set for April 7, 2008 (*id*., p. 1).

Defendant filed three notices about his mental health. The first notice was filed September 10, 2007 (Court File No. 418), a week before the Government's deadline to request a mental evaluation of Defendant. The notice named an expert witness, Dr. David Solovey, a psychologist who has interviewed Defendant and members of his family, administered various psychological tests on Defendant, and reviewed various records. The notice states Dr. Solovey "will testify as to Mr. Taylor's psychological status relative to the commission of the alleged offense and his behavior while incarcerated. He will also testify to mitigation factors. He will not testify that Mr. Taylor is incompetent to stand trial, is mentally retarded, or meets the legal test of insanity."

Although the evidence of Defendant's psychological status is based on Dr. Solovey's interviews with Defendant, Defendant argues the Government does not need to conduct its own interview of Defendant because the Government has Dr. Solovey's report and Government experts

2

will be able to listen to Dr. Solovey's testimony at trial and rebut him.

Defendant filed a second notice on November 1, 2007, the day before his deadline to raise mental health as a defense or mitigating circumstance. The notice states Defendant "may introduce evidence that he suffers from Post Traumatic Stress Disorder and may also produce evidence concerning frontal lobe developments and its impact upon" him (Court File No. 427). To testify on these issues, Defendant stated he may call two witnesses in addition to Dr. Solovey (*id*.).

The Government subsequently filed its motion for a mental examination on November 7, 2007 (Court File No. 434). In the course of litigating the Government's motion for a mental evaluation, Defendant filed a third notice, on November 13, 2007 (Court File No. 442). That notice clarified Defendant's previous notices by explaining "the defense will not introduce psychological evidence during the guilt/innocence phase of the trial, but will only use said evidence during the sentencing phase. Defense will not introduce evidence that Mr. Taylor is incompetent to stand trial, was insane at the time of the offense, or is mentally retarded."

Defendant argues this "evidence will not rely on the experts' analysis of Mr. Taylor himself, but on the experts' knowledge of how particular elements of Mr. Taylor's personal history would affect the psychological development of anyone." (Court File No. 460, p. 5). Because no defense expert will interview Defendant on these issues, Defendant argues a Government expert is unnecessary; instead, Defendant argues, a Government expert can rely on the same evidence Defendant's experts will rely on, listening to evidence of Defendant's personal history and drawing conclusions.

In addition to challenging the Government's motions on the merits, Defendant argued the Government's November 7, 2007 motion was filed past the Revised Scheduling Order's September

17, 2007, deadline (Court File No. 440), and he filed a motion to strike the Government's motion for untimeliness (Court File No. 441).

The Government filed a response (Court File No. 449). Based on Defendant's representations in his third notice that he would only present proof of his mental state as mitigation at sentencing, the Government asked for a mental examination pursuant to Fed. R. Crim. P. 12.2(c).[1] As required by Rule 12.2(c)(2), the Government stated it would not see the results of an examination unless Defendant is convicted of a death penalty-eligible crime and Defendant confirms his intent to offer expert evidence on his mental health during the sentencing phase of the trial. As grounds, the Government argues "fundamental fairness." The Government concedes it should have previously objected to the Revised Scheduling Order, which allowed Defendant to provide notice of a mental health defense weeks after the Government's deadline to request a mental health examination of Defendant. The Government also conceded Defendant's September 10 notice indicated Dr. Solovey would testify about Defendant's psychological status, but argues there "was not necessarily a clear notice" of Defendant's intent to use a mental health defense until Defendant's November 1 notice. The Government requested a mental evaluation of Defendant, and suggested the examination could be conducted in Chattanooga, rather than a medical facility elsewhere, so as to allow Defendant's counsel access to him in the period preceding the trial without jeopardizing the April 7, 2008 trial date.

Judge Carter held a hearing and heard arguments on November 20, 2007 (Court File No. 451). He issued his R&R on December 5, 2007 (Court File No. 459). Judge Carter concluded the

---

[1] In the Government's motion, its original arguments were based largely on what it perceived to be Defendant's intention to use evidence relating to his mental capacity at the time of the alleged offense. With the clarification provided by Defendant's third notice, those arguments became moot.

4

Government's motion was out-of-time because Defendant's September 10 notice "was adequate notice to the Government that they should have made an immediate request for a mental evaluation which would have then been timely." (*Id*., p. 8). However, he declined to strike the Government's motion. "Balancing the equities and considering the importance of this case," Judge Carter granted in part the Government's motion, allowing an examination if it does not delay the trial. He ruled: "The Government may retain experts to assist it during the trial and sentencing phase. They may be present during the trial to advise on issues of cross-examination and will be allowed to testify as expert witnesses subject to all rules related to admissibility of expert testimony" (*id*., pp. 8-9). Judge Carter allowed the Government to conduct a mental evaluation locally so Defendant will have access to counsel while preparing for trial. In addition, the mental examination must be limited to issues raised by Defendant in his two notices on the subject, and not on issues of sanity at the time of the offense or competence. Furthermore, the results of the examination must be sealed and not disclosed to any attorney for the Government or Defendant unless Defendant is found guilty of a crime for which the death penalty is eligible and Defendant confirms an intent to offer expert evidence on his mental condition during the sentencing phase of the trial.

Defendant filed a timely objection (Court File No. 460). Defendant does not object to the magistrate judge's conclusion the Government was out of time, nor to allowing the Government to retain experts to assist it during the trial, to be present during trial for advice, and to testify. However, he objects to allowing a mental evaluation. Defendant argues allowing the Government to conduct a mental evaluation is unnecessary based on the nature of the mitigating factors Defendant intends to raise, and he contends a mental evaluation risks violating Defendant's rights under the Fifth and Sixth Amendments to the United States Constitution.

## II.     STANDARD OF REVIEW

This Court must conduct a *de novo* review of those portions of the report and recommendation to which objection is made and may accept, reject, or modify, in whole or in part, the magistrate judge's findings or recommendations.  28 U.S.C. § 636(b)(1)(C).

## III.    DISCUSSION

Defendant filed three notices about the mental health issues he intends to raise if there is a penalty phase.  Notice to the Government is required under Fed. R. Crim. P. 12.2(b) when a defendant intends to introduce expert evidence about his mental health on the issue of punishment in a capital case.

When a defendant provides notice under Fed. R. Crim. P. 12.2(b), as Defendant has done, "the court may, upon the government's motion, order the defendant to be examined under procedures ordered by the court."  Fed. R. Crim. P. 12.2(c)(1)(B).[2]  The Court must determine whether a psychiatric examination of a defendant "will be necessary for the government fairly to

---

[2] The result and reports of any such examination "must be sealed and must not be disclosed to any attorney for the government or the defendant unless the defendant is found guilty of one or more capital crimes and the defendant confirms an intent to offer during sentencing proceedings expert evidence on mental condition."  Fed. R. Crim. P. 12.2(c)(2).  "After disclosure under Rule 12.2(c)(2) of the results and reports of the government's examination, the defendant must disclose to the government the results and reports of any examination on mental condition conducted by the defendant's expert about which the defendant intends to introduce expert evidence."  Fed. R. Crim. P. 12.2(c)(3).  Statements made by Defendant during the mental examination, expert testimony based on any statement, and any fruits of statements are not admissible except on issues regarding mental condition on which Defendant has introduced expert evidence in a capital sentencing proceeding.  Fed. R. Crim. P. 12.2(c)(4).

6

rebut the defendant's expert evidence." *United States v. Davis*, 93 F.3d 1286, 1293 (6th Cir. 1996);[3] *see United States v. Visinaiz*, 96 F. App'x 594, 599 (10th Cir. 2004). This is a decision within the Court's discretion. *United States v. Baugus*, 137 F. App'x 962, 964 (9th Cir. 2005); Fed. R. Crim. P. 12.2 advisory committee's notes on 2002 amendments; *see Davis*, 93 F.3d at 1293.

Defendant's notices state he may introduce evidence regarding his "psychological status relative to the commission of the alleged offense," "his behavior while incarcerated," his suffering from Post Traumatic Stress Disorder, and his frontal lobe development. Only some of this evidence will come from the defense's psychiatric examination of Defendant, but that is no reason to prohibit the Government from conducting a psychiatric examination relating to mental health evidence. The Government is allowed to rebut evidence introduced by Defendant at the sentencing hearing. 18 U.S.C. § 3594(c). Defendant argues the Government does not need a psychiatric examination to rebut his evidence, but it is not the Court's role to determine what evidence the Government needs.

The Supreme Court, in addressing constitutional questions regarding psychiatric examinations, has stated the Government can conduct psychiatric examinations of a defendant when the defendant initiates a psychiatric examination or presents psychiatric evidence. *Buchanan v. Ky.*, 483 U.S. 402, 422-23 (1987); *Estelle v. Smith*, 451 U.S. 454, 468 (1981). Hence, even for psychiatric evidence not based on a psychiatric examination, the Government can rely on a psychiatric examination to rebut Defendant's evidence.

Defendant argues the Government's motion for a mental examination should be denied or

---

[3] Rule 12.2(c)(1)(B) was amended after *Davis* to "clarif[y] that the authority of a court to order a mental examination under Rule 12.2(c)(1)(B) extends to those cases when the defendant has provided notice, under Rule 12.2(b), of an intent to present expert testimony on the defendant's mental condition, either on the merits or at capital sentencing." Fed. R. Crim. P. 12.2 advisory committee's notes on 2002 amendments.

stricken for being out of time. The Court is displeased by the Government's late filing. The Government has chosen to prosecute a capital case; its prosecution should not be so lackluster that it files things late and only when the Court points out that it has not made an important filing. Nevertheless, in these circumstances, where the Government is entitled to rebut Defendant's evidence, striking the Government's motion would be too great a sanction. Instead, the Government is limited to conducting a psychiatric examination in or around Chattanooga, so Defendant and counsel still have access to each other during the final months of trial preparation.

Defendant, citing *United States v. Davis*, 93 F.3d 1286, 1291 n.1, n.2, n.3 (6th Cir. 1996),[4] argues "a defendant's Fifth Amendment right against self-incrimination is jeopardized where he is compelled to provide testimonial evidence against himself regarding his mental state at the time of the offense alleged against him. His Sixth Amendment right to counsel is raised because, during a critical state of the proceedings, he is being questioned outside the presence of his lawyer, and his Sixth Amendment right to compel witnesses is jeopardized by the threat that, if he does not comply with the government's examination, he will be prohibited from presenting his own witnesses." (Court File No. 460, p. 7). It is not clear what the Government's position is with respect to these arguments because, when the Government finally responded to Defendant's objection, it neglected to discuss any of these matters. Nevertheless, the Court concludes Defendant's contentions are without merit.

The Fifth Amendment commands that "No person . . . shall be compelled in any criminal case to be a witness against himself." This privilege applies to the sentencing phase of a capital trial,

---

[4]*Davis* merely notes these constitutional issues are raised by psychiatric examinations, but does not reach any decisions on their merits.

just as it does the guilt or innocence phase. *Estelle* 451 U.S. at 462-63. In *Estelle*, the Supreme Court held the Fifth Amendment was violated where prosecutors introduced evidence of a defendant's statements during a psychiatric evaluation when the defendant neither initiated a psychiatric evaluation nor attempted to use psychiatric evidence. *Id.* at 468. But when "a defendant requests such an evaluation or presents psychiatric evidence, then, at the very least, the prosecution may rebut this presentation with evidence from the reports of the examination that the defendant requested." *Buchanan v. Ky.*, 483 U.S. 402, 422-23 (1987) (holding there is no Fifth Amendment privilege against the Government introducing such evidence). Because Defendant raised a psychiatric defense, there is no Fifth Amendment violation. *See also Powell v. Texas*, 492 U.S. 680, 685 (1989); *Gibbs v. Frank*, 387 F.3d 268, 275 (3d Cir. 2004); *United States v. Hall*, 152 F.3d 381, 400 (5th Cir. 1998); *Kelly v. Withrow*, 25 F.3d 363, 369 (6th Cir. 1994); *United States v. Fell*, 372 F. Supp. 2d 753, 759 (D. Vt. 2005).

The Sixth Amendment states, "In all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." The Supreme Court has held defendants have a Sixth Amendment right to the assistance of counsel before submitting to a psychiatric interview. *Estelle* 451 U.S. at 469. When a defendant, based on the advice of counsel, seeks to introduce mental health evidence in the penalty phase, the Government's evaluation of the defendant's mental health does not violate the Sixth Amendment. *See Powell*, 492 U.S. at 685; *Buchanan*, 483 U.S. at 42; *Schneider v. Lynaugh*, 835 F.2d 570, 577 (5th Cir. 1988); *Cape v. Francis*, 741 F.2d 1287, 1297 (11th Cir. 1984); *United States v. Edelin*, 134 F. Supp. 2d 45, 50 (D.D.C. 2001).

The Sixth Amendment also states "the accused shall . . . have compulsory process for

9

obtaining witnesses in his favor." Defendant argues this right would be violated if he chooses to not comply with the Government's psychiatric examination because he will lose the right to present his own witnesses. In *United States v. Scheffer*, 523 U.S. 303, 308 (1998), the Supreme Court explained that defendants do not have unlimited rights under the Sixth Amendment to present evidence in their defense:

> A defendant's right to present relevant evidence is not unlimited, but rather is subject to reasonable restrictions. A defendant's interest in presenting such evidence may thus bow to accommodate other legitimate interests in the criminal trial process. As a result, state and federal rulemakers have broad latitude under the Constitution to establish rules excluding evidence from criminal trials. Such rules do not abridge an accused's right to present a defense so long as they are not "arbitrary" or "disproportionate to the purposes they are designed to serve." Moreover, we have found the exclusion of evidence to be unconstitutionally arbitrary or disproportionate only where it has infringed upon a weighty interest of the accused.

(internal quotation marks, citations, and footnote omitted). Because it is important for the Government to be able to conduct a psychiatric examination of Defendant to rebut mental health evidence Defendant intends to introduce, it would not violate Defendant's Sixth Amendment right to exclude his mental health evidence if he prevents the Government from conducting a psychiatric decision. Excluding such evidence would not be arbitrary nor disproportionate; it would be a targeted response proportional to Defendant's actions. Therefore, requiring Defendant to submit to a Government psychiatric examination would not violate his Sixth Amendment right to compel witnesses in his favor.

IV.     **CONCLUSION**

For the foregoing reasons, the Court will **OVERRULE** Defendant's objection (Court File No. 460), and **ADOPT** and **ACCEPT** the R&R (Court File No. 459), which **GRANTS IN PART**

the Government's motion for a mental examination (Court File No. 434) and **DENIES** Defendant's motion to strike (Court File No. 441).

An Order shall enter.

/s/
**CURTIS L. COLLIER
CHIEF UNITED STATES DISTRICT JUDGE**