UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | No. 1:04-CR-160 |
| v. | ) | |
| | ) | Chief Judge Curtis L. Collier |
| REJON TAYLOR, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM & ORDER**

In Defendant Rejon Taylor's ongoing capital trial, the United States seeks to introduce a hearsay statement. Defendant opposes the statement's admission on the grounds that it violates the Confrontation Clause of the United States Constitution. Because the Court concludes the statement is testimonial and the forfeiture-by-wrongdoing rule, as announced in *Giles v. California*, 128 S. Ct. 2678 (June 25, 2008), is not satisfied, the Court rules the statement inadmissible.

I.  **RELEVANT FACTS**

  A.  **The Indictment**

  A Superseding Indictment (Court File No. 447) charges Defendant with:

  (1) Carjacking Resulting in Death, in violation of 18 U.S.C. §§ 2119(3) and 2(a) and (b);
  (2) Firearms Murder During and in Relation to Carjacking, 18 U.S.C. §§ 924(j)(1) and 2(a) and (b);
  (3) Kidnapping Resulting in Death, 18 U.S.C. §§ 1201(a)(1) and 2(a) and (b); and
  (4) Firearms Murder During and in Relation to Kidnapping, 18 U.S.C. §§ 924(j)(1) and 2(a) and (b).

  The government is seeking a sentence of death pursuant to the Federal Death Penalty Act,

18 U.S.C. §§ 3591-3598 (Court File No. 547).

B.  **Evidence at Trial**

Defendant is accused of carjacking, kidnapping, and murdering Guy Luck. The government's theory, supported by evidence during the ongoing trial, is that Defendant had been responsible for various thefts and burglaries from Luck's house and other nearby residences in Atlanta, Georgia between 2001 and 2003. On August 6, 2003, Defendant along with codefendants Sir Jack Matthews and Joey Marshall went to Luck's house with the intention of robbing him. After confronting Luck at gunpoint, Marshall guarded Luck while Defendant began looking through Luck's house. Marshall testified Defendant later told him there was a warrant or other document connected with Defendant's arrest on theft charges in another case, which suggested Luck could be a witness against Defendant. This testimony was partly corroborated by a police photograph showing a document visible on a desk in Luck's house. The document indicated that thieves had been arrested.

At gunpoint, Luck was forced outside his house and into his van. Defendant got in the driver's seat, while Matthews guarded Luck in the back. Defendant and Matthews each had a gun. Defendant drove the van onto Interstate 75 and traveled north from Atlanta. They made a brief stop at a gas station in north Georgia before eventually crossing into southeast Tennessee, where Defendant exited the expressway and drove into the Chattanooga suburb of Collegedale. During the trip, Marshall followed behind in a car registered to Defendant's mother.

As Defendant drove the van around relatively isolated roads in Collegedale, Luck attempted to escape from the van by jumping Matthews. Matthews fired a shot, which hit Luck in the arm. He then attempted to fire another shot, but his gun jammed. Defendant turned around from the

2

driver's seat and, as the van veered off the road, Defendant fired a shot, which hit Luck. Defendant then fired another shot, which hit both Luck and Matthews. Despite being shot, Luck began aggressively approaching Defendant, at which point Defendant shot Luck again. The third bullet hit Luck in the mouth and caused his death later that day at Erlanger Hospital.

Defendant had additional rounds in his gun, but almost immediately after the last shot, he and Matthews left their guns in the van and walked briskly from the van to the car being driven by Marshall. Shortly after Defendant and Matthews exited the van, witnesses saw Luck emerge from the van. He was bleeding heavily and declared that he had been robbed and stated his fear that he was going to die.

Defendant was eventually arrested, as were Matthews and Marshall. Defendant pleaded not guilty and is currently on trial. Both Matthews and Marshall pleaded guilty to the four counts of the Indictment.[1]

### C. Luck's Hearsay Statement

Two business days before trial, the government filed a notice stating it intends to rely on the residual hearsay exception, Fed. R. Evid. 807, to admit a statement made by Luck to a police detective, Margaret Clouden (Court File No. 626). During trial, Defendant objected to this proposed testimony on the grounds that it did not satisfy the residual hearsay exception and would violate Defendant's constitutional right to confront witnesses called against him.

Clouden's testimony involved a statement made to her by Luck. At the time, Clouden was

---

[1] Both testified at this trial. Marshall testified consistently with the government's theory. Matthews, however, accused the government of trying to coerce him, and despite making earlier statements consistent with the government's theory, testified that a drug smuggling operation, child pornography scheme, and homosexual love affair led Defendant to kill Luck in self-defense.

3

a detective for the Dekalb County Police Department near Atlanta. She was investigating Defendant's use of stolen credit cards to purchase expensive electronics. Checks belonging to a restaurant owned by Luck were found in Defendant's possession. Outside the presence of the jury, Clouden testified she called Luck and identified herself as a Dekalb police detective. She told Luck she had the checks. Luck told her that his home had been burglarized and his checks had been stolen and counterfeited. She also asked Luck if the stolen checks were used in Dekalb County. In response to questioning by the Court, Clouden answered that a reasonable person would have concluded the conversation between her and Luck was investigatory in nature.

## II. DISCUSSION

Defendant contends Luck's statements are inadmissible hearsay and violate the Confrontation Clause of the United States Constitution. The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." The Confrontation Clause bars the "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination." *Davis v. Washington*, 547 U.S. 813, 821 (2006) (quoting *Crawford v. Washington*, 541 U.S. 36, 53-54 (2004)).

The Court begins its analysis by determining whether the testimony is offered for the truth of the matter. *United States v. Pugh*, 405 F.3d 390, 399 (6th Cir. 2005). Here, the government has expressly asserted the testimony is offered for the truth of the matter asserted. Therefore, the Court will determine whether the statement is testimonial. Because the Court concludes the statement is testimonial, it will then determine whether Defendant forfeited his right to confront the witness.

4

### A. Luck's Statement Was Testimonial

The government argues the Confrontation Clause does not apply because Luck's statement was not testimonial. *See United States v. McGee*, 529 F.3d 691, 697 (6th Cir. 2008) (citing *Crawford*, 541 U.S. at 51). Defendant argues, and the Court agrees, the statement was testimonial.

In *Crawford*, the Supreme Court held "[s]tatements taken by police officers in the course of interrogations" always qualify as testimonial. 541 U.S. at 52. *Davis* clarified that decision by holding that statements to a 911 operator are not testimonial if the statements are made "under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency." 547 U.S. at 822.

In contrast, *Davis* explained, statements "are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution." *Id.* Interrogations are testimonial when they are "solely directed at establishing the facts of a past crime, in order to identify (or provide evidence to convict) the perpetrator. The product of such interrogation, whether reduced to a writing signed by the declarant or embedded in the memory (and perhaps notes) of the interrogating officer, is testimonial." *Id.* at 826.

The Sixth Circuit has described the standard as "whether the declarant intends to bear testimony against the accused. That intent, in turn, may be determined by querying whether a reasonable person in the declarant's position would anticipate his statement being used against the accused in investigating and prosecuting the crime." *United States v. Cromer*, 389 F.3d 662, 675 (6th Cir. 2004).

The government contends the statements here were not testimonial because Clouden was

5

talking in the context of a Rockdale County investigation, which was outside her jurisdiction. In addition, she was on phone rather than in a formal setting, and Luck made no specific accusation identifying or accusing Defendant.

The Court concludes these distinctions are immaterial. Luck's statement is testimonial because he was providing evidence to convict the perpetrator by identifying past facts, specifically that checks found in Defendant's apartment had been stolen or counterfeited. The evidence links Defendant to a crime. *See, e.g.*, *United States v. Powers*, 500 F.3d 500, 509 (6th Cir. 2007) (holding confidential informant's identification of vehicle belonging to the defendant violated Confrontation Clause). Given that the victim was being interviewed by a police officer, he surely understood the facts he provided would be used to prosecute the culprit. This conclusion is supported by Clouden's testimony that a reasonable person would have understood the interview to be investigatory in nature. That Luck did not know the specific identity of the person he was linking to a crime is not pertinent. He was linking a person to a crime. Although the standard articulated in *Cromer* refers to "bear[ing] testimony against the accused," this does not require that the declarant know who is the accused. The key is that the statements were "made to the authorities who will use them in investigating and prosecuting a crime, . . . made with the full understanding that they will be so used." *Cromer*, 389 F.3d at 674. Put another way, "the primary purpose of the interrogation [was] to establish or prove past events potentially relevant to later criminal prosecution." *Davis*, 547 U.S. at 826.

### B.   Defendant Has Not Forfeited His Confrontation Right

Because Luck's statement was testimonial, Defendant has the right to cross-examine Luck. But the government argues Defendant has forfeited that right. This issue presents a close factual

6

question, and on balance the Court concludes Defendant has not forfeited his right.

In *Davis* and *Crawford*, the Supreme Court noted that "the rule of forfeiture by wrongdoing . . . extinguishes confrontation claims on essentially equitable grounds." *Davis*, 547 U.S. at 833 (quoting *Crawford*, 541 U.S. at 62). Neither *Davis* or *Crawford* set forth standards for applying the forfeiture rule. Courts applied the rule when a defendant was responsible for a witness's unavailability. *E.g.*, *United States v. Garcia-Meza*, 403 F.3d 364, 370 (6th Cir. 2005).

But two months prior to this trial, the Supreme Court decided *Giles v. California*, 128 S. Ct. 2678 (June 25, 2008). *Giles* added to the forfeiture analysis by requiring not only that the defendant prevented a witness from testifying, but that he "intended to prevent a witness from testifying."[2]

Pre-*Giles*, the forfeiture rule would apply here. For the purposes of this motion, the defense barely contests that Defendant killed Luck, and the evidence offered by the government supports that Defendant did kill Luck. Thus, prior to *Giles*, the Court would have admitted Luck's statement because Defendant was responsible for Luck's absence. But since the ruling in *Giles,* the government must also show that Defendant intended to prevent Luck from testifying.[3] The parties

---

[2]*Giles* thus partly overrules Sixth Circuit precedent, which did not impose an intent requirement. *E.g.*, *United States v. Parks*, 2008 WL 2091427, 2008 U.S. App. LEXIS 10999 (6th Cir. May 16, 2008) ("The Court need not find that the defendant intended to intimidate the witness in order to prevent her from testifying . . . ."); *Garcia-Meza*, 403 F.3d at 370 ("There is no requirement that a defendant who prevents a witness from testifying against him through his own wrongdoing only forfeits his right to confront the witness where, in procuring the witness's unavailability, he intended to prevent the witness from testifying."); *Cromer*, 389 F.3d at 679 ("a defendant only forfeits his confrontation right if his own wrongful conduct is responsible for his inability to confront the witness").

[3]The parties dispute whether the Court should apply a preponderance-of-the-evidence standard or a clear-and-convincing evidence standard. In *Davis*, the Supreme Court took no position on the proper standard to demonstrate forfeiture, but stated courts generally use the preponderance-of-the-evidence standard. 547 U.S. at 833. Under the preponderance-of-the-evidence standard, the factual question here is close but favors Defendant. Under a higher standard, the government would

7

have presented arguments, which raise a close factual question.

The government argues that codefendant Marshall testified they went to Luck's house to rob him. Once inside the house, Defendant supposedly saw a document suggesting Luck was involved in Defendant's prosecution for property crimes. Defendant told Marshall of his finding and suddenly the plan was no longer a robbery but an interstate kidnapping that ended with Luck's death. In addition, Luck likely believed he would be killed or harmed, thus prompting his efforts to overpower Matthews and escape from the van.

Defendant argues Marshall's credibility is suspect. If Defendant had specifically desired to prevent Luck from testifying, Defendant would have made sure Luck was dead when he left the van. Although Defendant had additional bullets in his gun and Luck was still upright and alive, Defendant departed the van. Although Luck died later that day, Defendant could not have predicted his death with certainty. Defendant and Matthews abandoned their still loaded guns in the van, rather than use them to kill Luck.

Having considered the parties' arguments, the evidence, and the reasonable inferences, the Court concludes solely for the purpose of this motion that the government has not proved Defendant intended to kill Luck to prevent him from testifying. The kidnapping in this case was not a typical robbery. For instance, Defendant did not merely seek to obtain money by driving Luck to an ATM. He took Luck all the way from Atlanta to the Chattanooga suburb of Collegedale. There are multiple possible inferences that can be drawn from this lengthy trip, but none of them show conclusively that Defendant intended to kill Luck to prevent him from being a witness. If that was Defendant's intention, the simplest way would have been to kill Luck in his house when Defendant

---

obviously still lose.

realized he was a potential witness. Instead, Defendant forced Luck outside his house at gunpoint and into a van, and then took Luck on a two-hour interstate drive. On the way, Defendant drove past large rural areas between Atlanta and Chattanooga, and yet did not stop in any of those isolated areas to kill Luck. Why Defendant stopped in Collegedale is unknown. That Luck tried to overpower Matthews may indicate Luck thought he was going to be killed, but that is not definite proof of Defendant's intent. Defendant shot Luck multiple times, but instead of using his remaining bullets to ensure Luck was dead, he left him alive. Although Luck would die later that day, the fact that Defendant did not ensure he was dead leads the Court to conclude the government has not proved Defendant intended to kill Luck to prevent him from being a witness.

### III. CONCLUSION

Luck's statement to Clouden is testimonial hearsay. Because the government has not proved Defendant intended to prevent Luck from testifying, the forfeiture-by-wrongdoing requirement set forth in *Giles* has not been established, and therefore the statement is inadmissible.

**SO ORDERED.**

**ENTER:**

/s/
**CURTIS L. COLLIER**
**CHIEF UNITED STATES DISTRICT JUDGE**