1        IN THE UNITED STATES DISTRICT COURT

2          EASTERN DISTRICT OF TENNESSEE

3                 AT CHATTANOOGA
    ------------------------------------------------------------
4                                   :
    UNITED STATES OF AMERICA,       :
5                                   :
              Plaintiff,            :
6                                   :
    v.                              :          1:04-CR-160
7                                   :
    REJON TAYLOR,                   :
8                                   :
              Defendant.            :
9   ------------------------------------------------------------
                                    Chattanooga, Tennessee
10                                  October 21, 2008

11  BEFORE:  THE HONORABLE CURTIS L. COLLIER,
                 CHIEF UNITED STATES DISTRICT JUDGE
12
    APPEARANCES:
13
            FOR THE PLAINTIFF:
14
            STEVEN S. NEFF
15          CHRISTOPHER D. POOLE
            Assistant United States Attorney
16          1110 Market Street, Suite 301
            Chattanooga, Tennessee  37402
17
            FOR THE DEFENDANT:
18
            WILLIAM H. ORTWEIN
19          Post Office Box 38
            Hixson, Tennessee  37343
20
            HOWELL G. CLEMENTS
21          1010 Market Street, Suite 401
            Chattanooga, Tennessee  37402
22

23
                       JURY TRIAL
24               NINETEENTH DAY OF TRIAL

25

UNITED STATES DISTRICT COURT

1    APPEARANCES:  (Continuing)

2

3           FOR THE DEFENDANT:

4           LESLIE A. CORY
            FREDERICK L. ORTWEIN
5           1010 Market Street, Suite 306
            Chattanooga, Tennessee  37402
6

7

8                              – – –

9

10                      INDEX OF PROCEEDINGS

11

12   Verdict . . . . . . . . . . . . . . . . . . . .  2668

13

14

15                      DEFENDANT'S EXHIBIT

16

17    DS20     Proposed response to communication from     2685
               the jury
18             (For identification only)

19

20

21

22                             – – –

23

24

25

UNITED STATES DISTRICT COURT

1    (IN OPEN COURT)

2         THE COURT:  Ladies and gentlemen, I apologize for the

3    confusion.  When you left on last Wednesday, I told you that

4    you should just go directly to the jury deliberation room and

5    once the last person had arrived you could start your

6    deliberations.  But because of the long break that we took in

7    the case, the attorneys have asked that I inquire of you

8    whether anyone has been exposed to any publicity or other

9    extraneous communication or information regarding the trial

10   during the break from last Wednesday until this morning.  If

11   anyone has been exposed to such publicity or other extraneous

12   communication, just raise your hand.

13         (Brief pause.)

14         THE COURT:  Okay.  There is a negative reply from all

15   members of the jury.  I will then order that the jury return to

16   the jury deliberation room to continue with your deliberations.

17   Okay.  The jury can leave the courtroom now.

18         (The jury exited the courtroom, and the proceedings

19         continued as follows:)

20         (Brief pause.)

21         THE COURT:  Be seated.  You may have seen that we

22   only had five alternates present this morning, one of the

23   alternates was not here.  The Court has been advised that the

24   son of that alternate was involved in a very serious automobile

25   accident on Friday and he's in the intensive care unit at

1   Erlanger now and the alternate, the father, is with him there.

2   Unless someone has some objection, then I would propose that we

3   just excuse that alternate.

4           MR. NEFF:  I agree, Your Honor.

5           MS. CORY:  We have no objection, Your Honor.

6           THE COURT:  That alternate, then, is excused.

7           The jury also inquired this morning if they could

8   get another copy of the verdict form.  They've marked up the

9   original one, and they asked if they could get another one.

10  So I authorized Ms. Palmer to obtain a clean copy of the

11  verdict form and give it to them.  I don't think she has done

12  it.

13          Have you done that yet, Ms. Palmer?

14          THE CLERK:  No, sir.

15          THE COURT:  Okay.  She has it here.  If anyone would

16  like to look at it before it goes back, just contact her.

17          Okay.  Is there anything else we need to take up?

18          MR. POOLE:  No, thank you.

19          MS. CORY:  No, sir.

20          (Recess for deliberations.)

21          THE COURT:  Please be seated.

22          The Court has received a communication from the

23  jury.  The communication asks what happens if they cannot

24  reach a unanimous verdict.  The Court proposes the following

25  response to their question, quote, "You have asked what

1  happens if the jury cannot reach a unanimous verdict.  This is

2  a question that is often asked in trials taking a considerable

3  amount of time or involving difficult issues.  It is not

4  uncommon for there to be disagreement or for jurors to find it

5  difficult to reach a unanimous decision.  However, we can only

6  ask that the jury try its best to work out its differences."

7          The Court has shared this proposed response with the

8  parties, and the Court is informed that the government does

9  not have any objection to it but that the defendant does.

10         Mr. Ortwein?

11         MR. WILLIAM ORTWEIN:  Yes, Your Honor.  Ms. Cory may

12 have to help me with this argument, candidly.  I think,

13 Number 1, you could interpret this question two different ways.

14 First of all, it could be that they can't -- they're saying

15 they cannot reach a unanimous verdict, "So what are we to do?"

16 which simply would be to report that to the Court, and if the

17 Court wanted to add in there that the Court will then sentence

18 the defendant to a life sentence, or it could be interpreted to

19 request a legal answer.

20         As I understand, Judge—this is where Ms. Cory may

21 have to help me—originally we requested in the jury charge

22 that Your Honor charge the jury to the effect that if it was

23 not a unanimous decision, that the defendant would be

24 sentenced to life.  I understand, obviously, that is the law.

25 The Court, as I -- according to Ms. Cory, at least, found some

1    cases that said that it shouldn't be told that that early on.

2    And so the Court did not submit that to the jury at that time.

3          However, at this point in time, the jury, under my

4    alternative interpretation of the question, is specifically

5    asking the Court what happens.  And we believe that the law

6    being obvious, that the Court should advise the jury that if

7    the jury does not reach a unanimous decision, then the Court

8    will sentence the defendant to life imprisonment without

9    parole, period, which is the law.

10          As I say, to me, there are two separate

11    interpretations of the question.  But I do -- I believe that

12    the Court has an obligation to answer the exact question by

13    the jury as to what the law is, which is, under my second

14    theory, what the jury wants to know, is what happens.  As I

15    say, I can read it two different ways.  What happens?  Well,

16    first of all, then you need to report it to the Court if you

17    can't, period, or, under the second interpretation, would be

18    that the defendant would receive a life sentence, the Court

19    would sentence the defendant to a life sentence.

20          Under either interpretation, I think that the Court

21    could reply that if the jury cannot reach a unanimous

22    decision, then they should report that to the Court and the

23    Court will then sentence the defendant to life imprisonment,

24    and that that would be the proper response.  And it is the

25    law, rather than--  With all due respect to Your Honor, I

1   really don't believe that the proposed answer or reply

2   addresses the question asked by the jury.

3               THE COURT:  Thank you, Mr. Ortwein.

4               Would the government like to add anything?

5               MR. NEFF:  Well, Your Honor, I don't think the Court

6   has an obligation to say those things.  Obviously we provided

7   the case law that the Court took under advisement when the

8   Court first gave the instructions that it gave.  And the

9   government certainly does have a very strong interest in having

10  the jury reach a unanimous decision.  There are a lot of things

11  that constitute the law that the jury is not instructed on.

12              If the jury sent out a question asking, "Well, what

13  happens if the Sixth Circuit overturns the conviction?" I

14  don't think the Court is obligated to answer that just because

15  it's a question about what the law is.  This falls into that

16  category.  Just because it's true doesn't mean it needs to be

17  or should be said, because of the competing interests

18  involved.  So the case law, I think, is very clear, both

19  Sixth Circuit and Supreme Court, about the interest in a

20  unanimous verdict.  And this response the Court has proposed,

21  I think, adequately addresses the question that the jury has

22  asked.

23              THE COURT:  Thank you.

24              At the time of the jury charge, the Court had in the

25  proposed instructions some language as to what happens if

1   there is not a unanimous decision with regard to death. The

2   government objected to that language and pointed the Court to

3   some cases, a Supreme Court case, plus Sixth Circuit cases.

4   After the Court read those cases, the Court did learn that the

5   Sixth Circuit discourages judges from instructing the jury to

6   that effect. At this point, then, in light of those

7   Sixth Circuit cases and the authorities that the government

8   alluded to, the Court does not feel it appropriate to go much

9   further than what the Court is doing now.

10       As Mr. Ortwein said, the questions are susceptible

11   to multiple interpretations. One interpretation could be that

12   they are deadlocked and they're asking what to do. Another

13   interpretation could be they're just asking out of curiosity.

14   Another interpretation is that they're having some difficulty

15   but they have not reached deadlock now.

16       One of the advantages to the instructions the Court

17   gives is, it allows them to tell us specifically what the

18   issue is. If they're deadlocked——this is a very intelligent

19   jury——they'll tell us that. If they need something else, they

20   will tell us that, also. What the instruct- -- what the

21   communication does, in essence, is to repeat what the Court

22   told the jury at the end of the instructions——do their best,

23   work hard, and try to work out their differences.

24       So the Court, then, will affix its signature to the

25   instruction. The Court will give it to Ms. Palmer and

1    instruct Ms. Palmer to give it to the jury.

2          The jury has also asked if they could take lunch.

3    As soon as Ms. Palmer returns back from delivering it to the

4    jury, the Court will have the jury brought in and release it

5    for lunch.

6          Mr. Ortwein?

7          MR. WILLIAM ORTWEIN:  Just for the purpose of the

8    record, Judge, I want to make it clear that we do object to the

9    charge that Your Honor is going to give to it.

10          THE COURT:  Ms. Palmer, would you please take the

11   Court's communication to the jury.

12          (Brief pause.)

13          MR. POOLE:  Judge, if I might ask a procedural

14   question.  This is on down the line, obviously, but for our

15   victim's sake, if the jury were to come back hung or come back

16   with a life without parole or, I guess, come back with whatever

17   the verdict is, does Your Honor foresee setting a sentencing

18   hearing off?  I know that often in life sentences a PSR is

19   prepared; I don't believe they are supposed to be in a sentence

20   of death.  But just as far as letting our victim know when or

21   if there might be a day when sentence would actually be

22   pronounced, or does Your Honor have a plan with regards to

23   that?

24          THE COURT:  Mr. Ortwein?

25          MR. WILLIAM ORTWEIN:  Your Honor, technically I

1    thought the Court went ahead, once the jury came back with a

2    verdict, and entered sentence at that point.  I may--  I

3    haven't looked at that.  That was just my

4    off-the-top-of-my-head conclusion.

5         THE COURT:  Is there any reason why a presentence

6    report should not be prepared?  It may be beneficial to the

7    Bureau of Prisons.

8         Ms. Cory?

9         MR. WILLIAM ORTWEIN:  Well, they do go --

10        MS. CORY:  Your Honor, I would say that the Bureau of

11   Prisons is going to request a post-sentence report, which would

12   contain all the information that's relevant to Mr. Taylor that

13   the Bureau of Prisons needs.  But in terms of the amount of

14   information that would ordinarily go into the presentence

15   report, the facts of the offense and guideline calculations and

16   that sort of thing would be irrelevant.  So the Court could

17   impose sentence and then order the probation office to do a

18   post-sentence report.

19        MR. POOLE:  I was just wondering.

20        THE COURT:  Mr. Poole, are you saying that because

21   you think that the relatives or friends of the victim would

22   like a chance to speak?

23        MR. POOLE:  Judge, I think that Ms. Belcher, at

24   least, might like a chance to speak.  I think she would like to

25   be here.  However, she knew that the jury -- she is in Atlanta,

UNITED STATES DISTRICT COURT

1   obviously, and she knew the jury could be out for any number of

2   time, so she has chosen not to wait in Chattanooga at a hotel

3   during last week and this week.  But she had asked us whether

4   there would be another date.  Quite frankly, I told her I would

5   ask the Court but I didn't know if there would be.  I think she

6   would show up if there was another date, and might wish to

7   speak.

8           THE COURT:  Is this the type of offense where victims

9   have a right to speak?

10          MR. POOLE:  Yes, I think it is.  Now, whether or not

11  she technically qualifies as a victim might be -- might be the

12  issue, Judge.

13          THE COURT:  Ms. Cory, do you know, is this the type

14  of case where victims have a right to speak?

15          MS. CORY:  Your Honor, it's a crime of violence.  I

16  would assume--

17          (Brief pause.)

18          MS. CORY:  I'm sorry.  A juror started to walk in.  I

19  would assume that it is that type of offense.  And she, of

20  course, has already had an opportunity to testify.  And I don't

21  think she would qualify under the definition of a victim for

22  purposes of the statute, nor do I know that her daughter, the

23  younger Ms. Belcher, would qualify.  I'd be happy to look into

24  it.

25          THE COURT:  We'll take a look at that.

1          MR. POOLE:  Thank you.

2          THE COURT:  Ms. Palmer.

3          (Brief pause.)

4          (The jury entered the courtroom, and the proceedings

5          continued as follows:)

6          THE COURT:  Please be seated.

7          Ladies and gentlemen, it's a little bit after 12:00.

8     Why don't you go ahead and take your lunch break now.  Why

9     don't you try to get back at 1:30.  And as I've said in the

10    past, do not begin deliberating until the twelfth person has

11    returned.  And also recall my earlier instructions regarding

12    watching, reading, or listening to anything at all about this

13    case or talking about it.

14          Ms. Palmer.

15          (Luncheon recess.)

16          (Recess for deliberations.)

17          (The jury entered the courtroom, and the proceedings

18          continued as follows:)

19          THE COURT:  Please be seated.

20          The Court has received another communication from

21    the jury.  The communication states that the jury has reached

22    a verdict.

23          Has the jury reached a decision in this case?

24          THE FOREPERSON:  Yes, sir.

25          THE COURT:  If you would, please give the verdict

1  form to Ms. Palmer.

2          (Brief pause.)

3          THE COURT:  Mr. Ortwein, would you and your client

4  please stand and face the jury.

5          Ms. Palmer, would you please announce the jury's

6  decision from the verdict form.

7          THE CLERK:  "We, the jury, unanimously find that the

8  government has proved beyond a reasonable doubt:

9          "1.  Age of Defendant.

10         "Defendant was 18 years of age or older at the time

11 of the offense."

12         The answer is, "Yes."

13         "2.  Requisite Mental State.

14         "Defendant intentionally killed the victim."

15         The answer is, "Yes."

16         "Defendant intentionally inflicted serious bodily

17 injury that resulted in the death of the victim."

18         The answer is, "Yes."

19         "Defendant intentionally participated in an act,

20 contemplating that the life of a person would be taken or

21 intending that lethal force would be used in connection with a

22 person other than one of the participants in the offense, and

23 the victim died as a direct result of the act, which directly

24 resulted in the death of Guy Luck."

25         And the answer is, "Yes."

1          "Defendant intentionally and specifically engaged in

2    an act of violence, knowing that the act created a grave risk

3    of death to a person other than one of the participants in the

4    offense, such that participation in the act constituted a

5    reckless disregard for human life, and Guy Luck died as a

6    direct result of the act."

7          The answer is, "Yes."

8          "Number 3.  Statutory Aggravating Factors.

9          "The death, or injury resulting in death, occurred

10   during the commission of kidnapping."

11         The answer is, "Yes."

12         "Defendant committed the murder after substantial

13   planning and premeditation to cause the death of Guy Luck."

14         The answer is, "Yes."

15         "4.  Nonstatutory Aggravating Factors.

16         "Defendant attempted to escape from a detention

17   facility in Chattanooga, Tennessee, on April 14, 2006, and

18   that this factor tends to support imposition of the death

19   penalty."

20         The answer is, "No."

21         "Defendant would be a danger in the future to the

22   lives and safety of other persons, and that this factor tends

23   to support imposition of the death penalty."

24         The answer is, "Yes."

25         "Defendant caused injury, harm, and loss to Guy Luck

and his family and friends, and that this factor tends to
support imposition of the death penalty."

The answer is, "No."

"Number 5.  Mitigating Factors.

"A.  Alternative Sentence.

"Number 1.  If he is not sentenced to death, Rejon
Taylor will be incarcerated for the rest of his life in a
federal prison with no possibility of release."

"Number of jurors who so find:  Twelve.

"B.  Circumstances of the Crime.

"2.  There was a struggle for a gun before Guy Luck
was shot.

"Number of jurors who so find:  Zero.

"3.  While there is sufficient evidence of Rejon
Taylor's guilt, the evidence does not establish Rejon Taylor's
guilt of the capital crime of intentionally killing Guy Luck
with sufficient certainty to justify imposition of a sentence
of death.

"Number of jurors who so find:  Zero.

"4.  While there is sufficient evidence of Rejon
Taylor's guilt, the contradictory statements of the
government's witnesses does not remove all doubt.

"Number of jurors who so find:  Zero.

"5.  There is or scientific or physical evidence,
such as DNA, showing whether Rejon Taylor or Sir Jack Matthews

1   killed Guy Luck.

2            "Number of jurors who so find:  Zero.

3            "C.  Relative Culpability.

4            "6.  Sir Jack Matthews will not be sentenced to

5   death for his role in the murder of Guy Luck, despite his

6   history of violence.

7            "Number of jurors who so find:  Zero.

8            "7.  Joey Marshall, who was involved in the escape

9   attempt, will not be sentenced to death for his role in the

10  murder of Mr. Luck.

11           "Number of jurors who so find:  Zero.

12           "8.  The government's plea bargains with Sir Jack

13  Matthews and Joey Marshall weigh against imposition of a death

14  sentence upon Rejon Taylor.

15           "Number of jurors who so find:  Zero.

16           "D.  Background of Rejon Taylor.

17           "9.  Rejon Taylor was subjected to neglect as a

18  child.

19           "Number of jurors who so find:  Zero.

20           "10.  Rejon Taylor was exposed to violence within

21  the home as a child.

22           "Number of jurors who so find:  Nine.

23           "11.  Rejon Taylor's father subjected him to

24  emotional abuse.

25           "Number of jurors who so find:  Twelve.

1          "Number 12.  Rejon Taylor's parents were inadequate.

2          "Number of jurors who so find:  Twelve.

3          "13.  Rejon Taylor lacked positive male role models

4    in his family.  His father was in prison for most of Rejon's

5    life, and his older brother also served time in prison and was

6    involved in criminal behavior.

7          "Number of jurors who so find:  Twelve.

8          "E.  Character of Rejon Taylor.

9          "14.  Rejon Taylor was 18 years old at the time of

10   Guy Luck's death.

11         "Number of jurors who so find:  Twelve.

12         "15.  At the age of 18, a person has not fully

13   matured.

14         "Number of jurors who so find:  One.

15         "16.  Rejon Taylor has never before been convicted

16   of a crime.

17         "Number of jurors who so find:  Twelve.

18         "17.  Rejon Taylor had no prior history of violent

19   criminal conduct.

20         "Number of jurors who so find:  Zero.

21         "18.  Although not a defense to murder, Rejon

22   Taylor's capacity to appreciate the wrongfulness of his

23   conduct or to conform his conduct to the requirements of law

24   was impaired by his brain's immaturity.

25         "Number of jurors who so find:  Zero.

1          "19.  Rejon Taylor was immature and lacked the

2    emotional development and decision-making abilities that would

3    be expected in a mature adult.

4          "Number of jurors who so find:  Two.

5          "20.  Although not a defense to murder, at the time

6    of Guy Luck's death, Rejon Taylor was acting under mental or

7    emotional disturbance.

8          "Number of jurors who so find:  Zero.

9          "21.  Rejon Taylor has shown kindness and concern

10   for other people in his community.

11         "Number of jurors who so find:  Five.

12         "22.  Rejon Taylor conducted himself appropriately

13   during the trial.

14         "Number of jurors who so find:  Zero.

15         "23.  Rejon Taylor has a positive relationship with

16   his defense team.

17         "Number of jurors who so find:  Twelve.

18         "24.  Rejon Taylor's life has value.

19         "Number of jurors who so find:  Twelve.

20         "25.  After the shooting, Rejon Taylor was

21   remorseful.

22         "Number of jurors who so find:  Zero.

23         "F.  Future Adaptation to Prison.

24         "Number 26.  While incarcerated at the Hamilton

25   County Jail, Rejon Taylor participated in GED classes.

1          "Number of jurors who so find:  Twelve.

2          "27.  While incarcerated at the Hamilton County

3   Jail, Rejon Taylor participated in religious programs.

4          "Number of jurors who so find:  Twelve.

5          "28.  While incarcerated at the Hamilton County

6   Jail, Rejon Taylor encouraged others to study the Bible.

7          "Number of jurors who so find:  Twelve.

8          "29.  Other than the escape attempt, Rejon Taylor

9   has shown respect for the staff at the Hamilton County Jail.

10         "Number of jurors who so find:  Zero.

11         "30.  Rejon Taylor was influenced to become involved

12   in an escape by older, more criminally experienced inmates.

13         "Number of jurors who so find:  Three.

14         "31.  Although two officers were hurt in the escape

15   attempt, Mr. Taylor did not hurt anyone.

16         "Number of jurors who so find:  Twelve.

17         "32.  Rejon Taylor responds well to structured

18   environments.  He would likely make a good adaptation to

19   prison if he were sentenced to life imprisonment.

20         "Number of jurors who so find:  Zero.

21         "G.  Other Factors.

22         "33.  Other factors in Rejon Taylor's childhood,

23   background, or character mitigate against imposition of a

24   death sentence.

25         "Number of jurors who so find:  Zero.

1          "Number 6.  Determination.

2          "Based upon consideration of whether the aggravating

3     factor or factors found to exist sufficiently outweigh any

4     mitigating factor or factors found to exist:  We determine, by

5     unanimous vote, that the sentence to be imposed shall be

6     death.

7          "7.  Certifications.

8          "By signing below, each juror certifies that

9     consideration of the race, color, religious beliefs, national

10    origin, or sex of the defendant or the victim was not involved

11    in reaching his or her individual decision, and that the

12    individual juror would have made the same determination

13    regarding a sentence for the crime or crimes in question

14    regardless of the race, color, religious beliefs, national

15    origin, or sex of the defendant or the victims."

16         And it's signed by all twelve jurors.

17         THE COURT:  Mr. Ortwein, you and your client may be

18    seated.

19         MR. WILLIAM ORTWEIN:  Yes, Your Honor.  We would

20    request a poll.

21         THE COURT:  Ladies and gentlemen, you heard

22    Mr. Ortwein, state that he would like to have the jury polled.

23    We did this at the conclusion of the first phase of the trial.

24    I'm going to have Ms. Palmer call you by your number.  So she

25    will call you by your number, and you can just respond

1    according to your number.

2            Ms. Palmer.

3            THE CLERK:  Juror Number 132, is the verdict I have

4    just read your verdict?

5            JUROR 132:  Yes.

6            THE CLERK:  Juror 158, is the verdict I have just

7    read your verdict?

8            JUROR 158:  Yes.

9            THE CLERK:  Juror 116, is the verdict I have read

10   your verdict?

11           JUROR 116:  (Moving head up and down.)

12           THE CLERK:  Juror 144, is the verdict I have just

13   read your verdict?

14           JUROR 144:  Yes.

15           THE CLERK:  Juror 228, is the verdict I have read

16   your verdict?

17           JUROR 228:  Me?  Yes.

18           THE CLERK:  Juror 115, is the verdict I have read

19   your verdict?

20           JUROR 115:  Me?  Yes.

21           THE CLERK:  Juror 148, is the verdict I have read

22   your verdict?

23           JUROR 148:  Yes.

24           THE CLERK:  Juror 138, is the verdict I have read

25   your verdict?

1           JUROR 138:  Yes.

2           THE CLERK:  Juror 256, is the verdict I have read

3    your verdict?

4           JUROR 256:  Yes.

5           THE CLERK:  Juror 122, is the verdict I have read

6    your verdict?

7           JUROR 122:  Yes.

8           THE CLERK:  Juror 114, is the verdict I have read

9    your verdict?

10          JUROR 114:  Yes.

11          THE CLERK:  And, Juror 160, is the verdict I have

12   read your verdict?

13          JUROR 160:  Yes.

14          THE COURT:  In view of the poll, then, the Court will

15   order the courtroom deputy to file and record the jury's

16   decision.  The Court will also order that the jurors' names on

17   various communications with the Court and also on the verdict

18   be redacted.  And the numbers can be substituted for their

19   names.

20          Ladies and gentlemen, this will conclude your

21   service as jurors in this case.  There are a couple of things

22   I'd like to say to you before you leave, though.  First, your

23   service as jurors in this case has been very important.  You

24   have served in an extremely important case.  And I know that

25   the decision was a very, very difficult decision for you.  In

1     our society in the United States we have taken away from

2     government officials the ability to take away a citizen's

3     property or their liberty or even their life, and that's a

4     decision that is reserved to the people.  The Preamble of the

5     Constitution says, "We, the people," and the Founders wanted

6     to reserve that to we, the people.  And you, as jurors,

7     represent the people.

8             So I'm going to excuse you now.  The other comment

9     I'd like to make is, because of the interest in this case, and

10    as you can see from some press people here, there may be some

11    effort to contact you and ask you about the case.  I don't

12    have the authority to tell you not to discuss the case with

13    other people now.

14            I would like to let you know, though, that if you

15    decide to talk to people about the case, especially press,

16    what you say may not be reported correctly, and they may not

17    understand exactly what you say, and that might lead to some

18    future proceedings in this case.  So I would ask you to

19    exercise some caution.  You are not required to speak to

20    anybody about the case.  If you do decide to speak to someone,

21    that is your own decision.

22            The lawyers cannot be allowed to speak to you unless

23    this Court specifically authorizes them to do so.  And if the

24    Court decides to do that, the Court will let you know in

25    advance.

1          The jury should return to the jury deliberation

2    room, and all 18 jurors can go.

3          (The jury exited the courtroom, and the proceedings

4          continued as follows:)

5          THE COURT:  Please be seated.

6          There are two other matters that the Court thinks

7    that we need to go ahead and take care of.  The first is, we

8    need to set a date for the imposition of sentence.  I would

9    suggest we try to set that about a month out or so.

10          MR. POOLE:  Yes, sir.

11          MR. NEFF:  That's fine.  Thank you, Your Honor.

12          THE COURT:  Mr. Ortwein?

13          MR. WILLIAM ORTWEIN:  Could I suggest December

14    sometime, Judge?  We still have the escape case to contend

15    with, also.

16          THE COURT:  How about December 11th at 9:00?

17          MR. NEFF:  That's fine.  Thank you, Your Honor.

18          MR. CLEMENTS:  Judge, I've got to be in the

19    Sixth Circuit for our case.  It's a death penalty case, habeas

20    corpus before Your Honor, and it's set the 11th at the

21    Sixth Circuit.

22          THE COURT:  Mr. Poole, how long do you think the

23    escape case will take?

24          MR. POOLE:  Judge, I wouldn't think it would take

25    more than two, three days at the most.  I also know that

1  Ms. McFadden, one of the defense attorneys in the case, may

2  have a conflict on the day it's currently set in December, and

3  might ask for another continuance.  I don't know.  So...

4          THE COURT:  Why don't we set it for December 3rd,

5  then.

6          MR. POOLE:  Thank you.

7          THE COURT:  That's an off day.  That's a Wednesday.

8  9:00 a.m?

9          MR. LEE ORTWEIN:  Actually, Judge, yeah, the escape

10 trial starts the 1st.

11         THE COURT:  I'm sorry?

12         MR. LEE ORTWEIN:  The escape trial starts

13 December 1st.

14         THE COURT:  That's right, December 1st.  Mr. Poole

15 indicates he thinks it will take two days.  He also thinks that

16 there is a good chance that the other defendant will ask that

17 the case be continued.

18         MR. LEE ORTWEIN:  That's fine, Judge.  I just wanted

19 to make sure the Court knew.

20         THE COURT:  Let's go ahead and set it then.

21         After the Court made inquiry of the jurors

22 concerning the press coverage of some statements made by the

23 government, the Court inquired of the jurors and made a report

24 to the attorneys.  The Court also indicated that depending

25 upon the decision of the jury, there might be an opportunity

 1   for the attorneys to further question the jurors concerning

 2   that.  I don't know if you have had time to think about that

 3   yet.  And you may not want to do it right now, even if you

 4   would still like to do that.

 5           MR. WILLIAM ORTWEIN:  We haven't had time to think

 6   about it, as far as doing it--  Well--

 7           MS. CORY:  Your Honor, I hate to think of having to

 8   bring them back, but I'm not prepared -- I don't think we are

 9   prepared to question them at this time.  I think we need to

10   make a decision whether we would like to proceed with that more

11   involved hearing on the jurors.

12           THE COURT:  The Court understands that.

13           Mr. Neff, is there anything further the Court must

14   decide today?

15           MR. NEFF:  Your Honor, we would move to withdraw the

16   exhibits and substitute photographs for the actual exhibits

17   that we used during the trial.  Other than that, we have

18   nothing else.

19           THE COURT:  Any objection?

20           MR. WILLIAM ORTWEIN:  No, there is--  Well, yes, sir.

21   For purpose of appeal, it may be necessary to go up with the

22   appeal.

23           THE COURT:  The government, I believe, indicated they

24   would take either photographs or have written descriptions, and

25   substitute those for the actual exhibits.  Some are guns and --

1           MR. NEFF:  Shanks.

2           THE COURT:  -- weapons.

3           MR. WILLIAM ORTWEIN:  Only--  If they're willing to

4    just take photographs of those type things, then that's fine.

5    Otherwise, though, Judge, we think all the documents,

6    statements, et cetera, should remain, as far as the record.

7           MR. NEFF:  They do, Judge.  We're just talking about

8    the substantive items, the physical evidence.

9           THE COURT:  Why don't I do this, then.  I will grant

10   the government's motion with the provision that the government

11   confer with the defense counsel and obtain defense counsel's

12   consent to anything that is withdrawn.

13          MR. WILLIAM ORTWEIN:  That's fine.

14          MR. CLEMENTS:  Your Honor, may I ask the Court a

15   question, please?

16          THE COURT:  Yes.

17          MR. CLEMENTS:  I would assume that does not mean the

18   exhibits that were just marked for identification, primarily

19   related to Mr. McNally's testimony and Dr. Bell's testimony?

20          THE COURT:  That's correct.  That's correct.

21          MR. CLEMENTS:  Thank you.

22          MR. WILLIAM ORTWEIN:  Your Honor, there is one other

23   matter.  I think the Court advised that I could take this up

24   later if necessary.

25          When the jury came out and asked their second

1    question, the one about -- to summarize, about if they

2    reported deadlocked, what effect would that have upon the

3    guilt finding, I requested a different communication from the

4    Court to the jury, which, basically, I understand, the Court

5    denied, since the Court did not give that charge after

6    discussing it with the clerk, which reads as follows, and I

7    would just like to make it a part of the record, since the

8    Court did not come out at that particular time to the bench.

9         THE COURT:  Thank you, Mr. Ortwein.  I had intended

10   to bring that up myself, but it had slipped my mind.  You are

11   correct.  The last question from the jury asked what would

12   happen if there was a deadlock in the case.  And the Court

13   proposed a reply that if there was a deadlock, that would be

14   reported to the Court, the jury would be discharged, and I

15   believe there may have been something -- another sentence.  But

16   Mr. Ortwein had requested that the jury also be told that if

17   they were deadlocked, then the Court would impose a sentence of

18   life without the possibility of parole.  That was pretty close

19   to a request that had been made earlier that the Court had

20   denied.

21        The Court observed at that time that the Court

22   itself had included in the initial jury charge a statement

23   along those lines.  The government had objected to it and

24   pointed out that there was a Supreme Court case plus

25   Sixth Circuit case law that indicated that that language

1  should not be included.  So the Court did not include that.  I

2  was also told by my staff that there was not the desire that

3  the Court take it up in open court at this time, but that the

4  parties would be willing to have the Court take it up later

5  on, in view of the previous discussions about the same thing.

6      MR. WILLIAM ORTWEIN:  Yes, sir.  I just want to be

7  sure that it's a part of the record, and that the Court was

8  aware of it, and requested timely.  That's basically the

9  reason.  What I understood was, if necessary I could bring it

10  up at a later time, it would be considered timely filed and

11  requested.

12      THE COURT:  Yes.  It was provided to the Court prior

13  to the time the Court signed the communication and had the

14  communication go back to the jury.

15      MR. WILLIAM ORTWEIN:  Judge, I don't know if this is

16  necessary, but what I did was, I sort of penciled in on the

17  instruction that was entitled "Communication with the Court"

18  your answer, after the word discharged, "the defendant would be

19  sentenced by the Court to life without parole."  If I could

20  just file that for the record.

21      THE COURT:  You can.  We'll make that an appellate

22  exhibit, also.

23      MR. WILLIAM ORTWEIN:  Thank you.

24      THE COURT:  Whatever the next numbered appellate

25  exhibit will be that exhibit.

1          (Defendant's Exhibit DS20 was received for

2          identification only.)

3          THE COURT:  Anything further, Mr. Ortwein?

4          MR. WILLIAM ORTWEIN:  No, sir.  I assume we can

5    advise the Court shortly about inquiry of the jury, voir diring

6    the jury about other matters.

7          THE COURT:  And you should do that, I would say, as

8    soon as you can.

9          MR. WILLIAM ORTWEIN:  We will, certainly.

10         THE COURT:  Because I think they're going to scatter.

11   And we have Thanksgiving coming up and other holidays coming

12   up.  So the quicker you can do that, the better.

13         I'm also assuming that in view of the decision there

14   will be motions for a new trial and motions for judgment

15   notwithstanding the jury's verdict.  There are some time

16   limits on that, and I'm assuming that you will try to comply

17   with those time limits and not ask for an extension.

18         MS. CORY:  Your Honor, without an extension on the

19   original request for --

20         THE COURT:  New trial.

21         MS. CORY:  -- for new trial as to the guilt/innocence

22   phase, and, yes, Your Honor, we will either get it done within

23   the time limits or request an extension on the penalty phase.

24         THE COURT:  Mr. Neff, anything further?

25         MR. NEFF:  No, thank you, Your Honor.

1    THE COURT:  Ms. Palmer, I think I ordered that the

2 jury's decision be filed and recorded.  If I did not do so, I

3 will make that order at this time.

4                          END OF PROCEEDINGS

5

6

7    I, Elizabeth B. Coffey, do hereby certify that I

8 reported in machine shorthand the proceedings in the

9 above-styled cause, and that this transcript is an accurate

10 record of said proceedings.

11

12

13                              s/Elizabeth B. Coffey
                               Elizabeth B. Coffey,
14                             Official Court Reporter

15

16

17

18

19

20

21

22

23

24

25