IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF TENNESSEE

AT CHATTANOOGA

---------------------------------------------------------------
                                    :
UNITED STATES OF AMERICA,           :
                                    :
          Plaintiff,                :
-versus-                            :               CR-1:04-160
                                    :
REJON TAYLOR, SIR JACK              :
MATTHEWS, AND JOEY MONTREZ          :
MARSHALL,                           :
                                    :
          Defendants.               :
---------------------------------------------------------------

                                    Chattanooga, Tennessee
                                    October 26, 2004
          BEFORE:   THE HONORABLE WILLIAM B. MITCHELL CARTER
                    UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

          FOR THE PLAINTIFF:

          HARRY S. MATTICE, JR.,  and
          STEVEN NEFF,
          1110 Market Street, Suite 301
          Chattanooga, Tennessee 37402


          FOR THE DEFENDANT REJON TAYLOR:

          William H. Ortwein, of
          Ortwein & Ortwein
          1010 Market Street, Suite 306
          Chattanooga, Tennessee 37402
                         -and-
          HOWELL G. CLEMENTS, of
          Clements & Cross
          1010 Market Street, Suite 401
          Chattanooga, Tennessee 37402

                    REDACTED TRANSCRIPT
                    INITIAL APPEARANCE
                    PAGES 1 THROUGH 36

APPEARANCES:  (Cont'd)


          FOR THE DEFENDANT MATTHEWS:

          GERALD H. SUMMERS, of
          Summers & Wyatt
          The James Building
          735 Broad Street, Suite 800
          Chattanooga, Tennessee 37402

          FOR THE DEFENDANT MARSHALL:

          ANTHONY MARTINEZ, ESQ., of
          Federal Defender Services
          203 Flatiron Building
          Chattanooga, Tennessee 37402


          ALSO PRESENT:  Richard Heinsman

THE COURT: I've been informed that the powers that be were testing the fire alarm system, and it appears to work quite well.

All right. Please call the cases.

THE CLERK: Criminal Action No. 04-CR-160, United States of America versus Rejon Taylor, Sir Jack Matthews and Joey Montrez Marshall.

THE COURT: We're here in these cases for an initial appearance. I originally thought that we would be able to conduct an initial appearance and arraignment, but for various reasons this will just have to be an initial appearance.

The purpose of an initial appearance is to do three things. First, it's to make certain that each defendant is represented by a lawyer. Second, that it's to explain the charges, to make sure that each of the -- each defendant understands the charges. And usually in the initial appearance or at some extension of it there is a hearing to determine if bond will be granted or if the defendants must be detained.

At the time that this case was scheduled, it was my understanding that Mr. Joey Marshall was going to be represented by retained counsel, Mr. Scott, from Georgia. I have been in touch with Mr. Scott and it appears for various reasons that Mr. Scott is not going to be in a position to represent Mr. Marshall. And because of that, we're going to

need to discuss the question of a lawyer. I have asked various lawyers to be here today in this case.

It is my understanding that the defendant, Mr. Taylor, was represented by Mr. Heinsman in a state court proceeding, and I have asked attorneys Bill Ortwein and Howell Clements, who are two experienced attorneys here at the bar to be here to give advice to Mr. Taylor, if he needs it.

And I've asked Mr. Jerry Summers, also, an experienced attorney here at the bar to be here to give advice to Mr. Matthews. And I have asked, imposed upon Federal Defender Services today for the limited purpose of today's hearing to give any advice or answer questions for Mr. Marshall, if Mr. Marshall should need to consult with a lawyer. It is to be the first thing that we take up in the hearing is issues concerning a lawyer.

Now, there are indictments in this case. There is an indictment in the case, and I am going to review this indictment. I'm going to first review it, then I'm going to get the government's lawyer to advise the maximum punishment that could be imposed in this case. Because we do not have all of counsel in place today, we are not going to be having the detention hearing today. It's my understanding that the government is going to be asking for three days to get ready for that hearing and under federal law they have a right to do that in this type of case.

Is the government seeking detention as to these three defendants?

MR. MATTICE: Yes, Your Honor.

THE COURT: Is the government going to be asking for three days?

MR. MATTICE: Yes, Your Honor.

THE COURT: It was necessary for me to have a conference with the lawyers in the case prior to this in order to determine what the situation was with Mr. Scott who we thought was going to be representing Mr. Marshall. And at that time we checked to see if the lawyers were available for a hearing at 2:00 on Friday. They are. And so, I'm going to reschedule the detention hearing in this case for 2:00 on Friday. There may or may not be an arraignment on that date.

Let me stop and say that an arraignment is a brief hearing where each defendant would be allowed to enter their plea of not guilty to the charges that are pending, and at that hearing I would schedule the trial of the case. The arraignment will either be Friday or at a short, at another hearing a short time later, but we will determine that at a later date.

Now, turning back to the charges. There should be indictments -- counsel, does each counsel have a copy of the indictment so that the defendant can see?

MR. SUMMERS: Counsel for Sir Jack Matthews has a

copy of the indictment and he has read it, Your Honor.

THE COURT: All right. Thank you, Mr. Summers. And I see nods from Mr. Ortwein and that's also true as to Mr. Taylor. And, Mr. Marshall, I take it he has a copy also, Mr. Martinez?

MR. MARTINEZ: Yes, sir.

THE COURT: All right. Now, I'm going to go over this in some detail because it is a significant charge. The first count of the indictment charges violations of 18 United States Code, Sections 2119(3) and 2(a) and (b), which is a carjacking resulting in death.

In this case, the grand jury is charging that on or about August the 6th of 2003, here in the Eastern District of Tennessee and elsewhere, that the defendants, Rejon Taylor, Sir Jack Matthews and Joey Montrez Marshall, aided and abetted by each other, with intent to cause death and serious bodily injury, did take and cause to be taken by force, violence, and intimidation, from the person and presence of another, a motor vehicle that had been previously transported, shipped, and received in interstate commerce, and in committing that offense did cause the death of Guy Luck; in violation of the code section set out there, 18, United States Code, Section 2119(3) and 18, United States Code, Sections 2(a) and (b). That's one charge.

The second charge charges a violation of 18 U.S.C.

Section 924(j)(1) and 2(a) and (b), that is firearms murder during and in relation to a carjacking. In this count, the grand jury is charging on about that day, August 6, 2003, here in Eastern District, Rejon Taylor, Sir Jack Matthews, Joey Montrez Marshall, aided and abetted by each other, did knowingly use, carry, and discharge a firearm during and in relation to a crime of violence for which they may be prosecuted in a court of the United States, that is, a carjacking, that's charged in Count 1 of this indictment and incorporated in this indictment, that is alleged to be a violation of 18, United States Code, Section 924(c)(1)(A)(iii), and in the course of this violation, it further alleges, that it caused the death of Guy Luck through the use of a firearm, which killing is a murder as defined in 18, United States Code, Section 1111, in that the defendants, with malice aforethought and in the perpetration of kidnapping, did unlawfully kill Guy Luck by shooting him multiple times with the firearm willfully, deliberately, maliciously, and with premeditation, that alleges a violation of 18 U.S.C. 924(j)(1) and 18, United States Code, Sections 2(a) and (b).

The third count charges a violation of 18, United States Code, Section 1201(a)(1) and 2(a) and (b), a kidnapping resulting in death. In this count the grand jury charges that on or about August the 6th of 2003, in the Eastern District of

Tennessee, the defendants, Rejon Taylor, Sir Jack Matthews and Joey Montrez Marshall, aided and abetted by each other, did willfully and unlawfully seize, confine, kidnap, abduct and carry away Guy Luck, and did hold him for ransom, reward and otherwise, and did transport him in interstate commerce from Georgia to Tennessee, and in committing this offense, did cause the death of Guy Luck, all in violation of 18, United States Code, Section 1201(a)(1) and 18, United States Code, Sections 2(a) and (b).

Final count, Count 4 charges a violation of 18, United States Code, Section 924(j)(1) and 2(a) and (b). Firearms murder during and in relation to kidnapping. The grand jury charges that on or about August the 6th of 2003, in the Eastern District of Tennessee, the defendants, Rejon Taylor, Sir Jack Matthews and Joey Montrez Marshall, aided and abetted by each other, did knowingly use, carry, and discharge a firearm during and in relation to a crime of violence for which they may be prosecuted in a court of the United States, that is, kidnapping, as charged in Count 3 of the indictment and incorporated fully herein, in violation of 18, United States Code, Section 924(c)(1)(A)(iii), and in the course of this violation caused the death of Guy Luck through the use of a firearm, which killing is a murder as defined in 18, United States Code, Section 1111, in that the defendants, with malice aforethought and in the perpetration of kidnapping, did

unlawfully kill Guy Luck by shooting him multiple times with the firearm willfully, deliberately, maliciously and with premeditation, in violation of 18, United States Code, Section 924(j)(1) and 18, United States Code, Sections 2(a) and (b).

At the arraignment of the case, we will review certain sentencing allegations. Those sentencing allegations are set out in Pages 5, 6 and 7 of the indictment. The allegations contained there relate to certain things that the government intends to prove in the trial of the case that may have an affect on sentencing. Does the government think that that needs to be read at this point or can that wait until the later date? Any thought on that?

MR. MATTICE: I believe it can be handled at the hearing on Friday, Your Honor.

THE COURT: Any objection to handling that at the arraignment by defense counsel? If there is any, let me hear it now.

MR. SUMMERS: Your Honor, excuse me for being disrespectful, I was asking co-counsel a question. Can you repeat the question?

THE COURT: Well, what I'm trying to -- what I was trying to say, Mr. Summers, is there are certain sentencing allegations as to Counts 1, 2, 3 and 4 that are spelled out on Pages 5, 6 and 7 of the indictment. And it's my intention to review those sentencing allegations which may have something

to do with the seriousness of the offense, I was going to review those at the arraignment, rather than --

MR. SUMMERS: Certainly no objection to that, Your Honor.

THE COURT: Mr. Ortwein?

MR. ORTWEIN: No, Your Honor.

THE COURT: Any objection from counsel?

MR. MARTINEZ: No objection.

THE COURT: Okay. We'll do that. I'm going now to ask the government to advise the defendants in the case what maximum punishment is for the offenses charged.

MR. MATTICE: Your Honor, the possible penalties for the offenses charged as to Counts 1, 2, and 4, the possibility of imprisonment from zero to life and/or fine up to $250,000, plus five years supervised release. All three counts are also death eligible. As to Count 3, mandatory-minimum life sentence, fine, and/or fine up to $250,000, five years supervised release. And Count 3 is also eligible for the death penalty.

THE COURT: It's a mandatory-minimum, Count 3 is life in prison?

MR. MATTICE: Count 3 is mandatory-minimum life.

THE COURT: All right. Essentially that means for each defendant that if convicted of Count 3, the two possible punishments are life or death?

MR. MATTICE: Correct, Your Honor.

THE COURT: In the federal system there is no parole, a life sentence means just that. Now, now, I'm going to take up questions of lawyers for each of these defendants. I want to make sure that each defendant knows that during this hearing today you have a right to remain silent. That right is guaranteed to you by the Fifth Amendment of the United States constitution.

Now, it is going to be necessary for me to ask each one of you some limited questions. You're going to be under oath. Anything that you say here in this courtroom could be used against you. And because that's true, you can simply choose not to answer questions and you would have a right to say nothing and to consult with a lawyer. That's the reason, one of the reasons that I have lawyers here so that you can exercise that privilege if you want to.

Now, having said that, I'm going to back up for a minute and tell you each what it is that I will be asking you about. First, I'm going to take up the question of a lawyer. And in order to do that, I'm going to ask your name, I'll ask your age, and I'll ask how far you went in school. And I'm going to ask whether you generally understand what's going on around you today. By that question, I'm trying to determine whether you understand that you're in a courtroom and understand that you are facing a serious federal criminal

charge here today. I may ask if you've had mental problems in the past. By that question, I'm trying to assess whether you are capable of understanding what's going on around you. Then I'm going to review with you the answers that each of you have given to me on the financial affidavit that has been filed.

Now, each of you have a right to hire any lawyer of your choice. If you don't have the money to hire a lawyer, on the other hand, then I would be in a position to appoint a lawyer for you. You are now in federal court. Lawyers represent defendants in federal court if they are retained, have to be paid essentially up front. Once a lawyer gets in a case at this stage of the arraignment, and we expect that that will happen perhaps by Friday, certainly, if it's not Friday it will be very soon thereafter, a lawyer in the case at that point has an obligation to represent you through the trial, and through any appeal of the case. Because that is so, it's necessary for lawyers to charge fees up front in federal court, unlike state court where they can just allow you to pay as you go so to speak because in state court you can get out of the case. In federal court, you cannot.

Now, having said those things, I'm going to be asking each of you these limited questions. If there is anything that I ask you that you think you should not answer, then simply don't answer and discuss it with your lawyer, with your lawyer here. I realize, Mr. Marshall, that you do not

have a lawyer here today and that you thought that you were going to have a lawyer here. Mr. Martinez is with Federal Defender Services and he's seated next to you and he can tell you anything that you need to know about these things. Since you're on the left, Mr. Marshall, I will to ask that you -- I'm going to need to first swear all of you in. If you each would stand where you are and raise your right hand so you can be sworn. Please swear the defendants.

(Whereupon, the defendants were sworn.)

THE COURT: Mr. Marshall, if you'd just remain standing there, and the other two defendants, Mr. Taylor and Mr. Matthews, you all can be seated. Mr. Marshall, is your name Joey Montrez Marshall, middle name spelled M-o-n-t-r-e-z?

MR. MARTINEZ: Your Honor, Mr. Marshall has just looked at me and he's asking me questions.

THE COURT: He may.

MR. MARTINEZ: May I confer with him?

THE COURT: You certainly may confer.

(Brief pause.)

MR. MARTINEZ: Thank you, Your Honor.

THE COURT: All right. Mr. Marshall, is your name Joey Montrez Marshall?

DEFENDANT MARSHALL: Yes.

THE COURT: How old are you, sir?

DEFENDANT MARSHALL: Nineteen.

THE COURT: And your date of birth? I didn't tell you in advance I was going to ask that. What's your date --

DEFENDANT MARSHALL: X/XX/85.

THE COURT: How far did you go in school, Mr. Marshall?

DEFENDANT MARSHALL: Eleventh grade.

THE COURT: Did you learn to read and write?

DEFENDANT MARSHALL: Yes.

THE COURT: Do you feel like you generally understand what's going on around you today in the sense that you know that you're in a courtroom here facing a charge?

DEFENDANT MARSHALL: Yes.

THE COURT: Have you ever had any mental problems in the past that would cause you to not be able to understand what's happening today?

DEFENDANT MARSHALL: No.

THE COURT: All right, sir. You filled out a financial affidavit, and in that financial affidavit, it basically indicates that you don't own any real estate, you don't own any assets or have any money on hand, is that correct?

DEFENDANT MARSHALL: Yes.

THE COURT: All right. Based upon those answers, you would qualify to have a lawyer appointed at government expense. Do you want me to appoint a lawyer to represent you?

UNITED STATES DISTRICT COURT

DEFENDANT MARSHALL: Yes.

THE COURT: All right. I'm going to appoint Federal Defender Services only for the purpose of today. I will be appointing other counsel for you and will have other counsel here on Friday for that hearing.

Now, let me explain to you and I want to make sure that the other defendants understand this. Even though I appoint a lawyer today, if you had family that wanted to hire a lawyer, you would be free to do that. But I will appoint counsel in your case and they will represent you today, Mr. Martinez of Federal Defender Services will represent you today, and I'll have another counsel here to represent you later. That will be on Friday at 2:00. So, if you'd have a seat. We'll come back later if there is any question.

Next I'll turn to Mr. Rejoin Taylor. Mr. Taylor, stand where you are.

MR. ORTWEIN: If it please the Court, before you question Mr. Taylor, let me advise the Court that I have advised him not to answer any questions concerning mental history or health. The others question are fine.

THE COURT: Do you have an objection to my asking if he understands what is happening here today?

MR. ORTWEIN: No, Your Honor, just that one question.

THE COURT: All right. You may stand right there.

And, Mr. Taylor, is your name Rejon, R-e-j-o-n, Taylor?

DEFENDANT TAYLOR: Yes, sir.

THE COURT: All right. How old are you, Mr. Taylor?

DEFENDANT TAYLOR: Twenty.

THE COURT: Age 20?

DEFENDANT TAYLOR: Uh-huh.

THE COURT: And your date of birth?

DEFENDANT TAYLOR: You all have two dates of birth for me, so I can give you the one on my driver's license. You have two. Obviously, one --

THE COURT: And you can't remember exactly what one is right, no doubt.

DEFENDANT TAYLOR: I know which one. At various times you got two different ones.

THE COURT: Give me the one on your driver's license first.

DEFENDANT TAYLOR: X/XX/84.

THE COURT: X/XX/84?

DEFENDANT TAYLOR: Uh-huh.

THE COURT: And that's on your driver's license?

DEFENDANT TAYLOR: Yes, sir.

THE COURT: Counsel, do you have any objection to my continuing to ask what other date of birth he's got?

MR. ORTWEIN: Your Honor, this is new to me, candidly.

THE COURT: I'll let you discuss it.

MR. ORTWEIN: I prefer to discuss that with him before he answers that under the circumstances.

THE COURT: I'll let you discuss that with your client later. I will not need to ask him further. He's stated he's age 20. And I'll take judicial notice we don't remember what day we were born, just one of those things somebody had a different date, that could happen, I guess. Mr. Taylor, how far did you go in school?

DEFENDANT TAYLOR: Eleventh grade.

THE COURT: Eleventh grade?

DEFENDANT TAYLOR: (Moves head up and down.)

THE COURT: Did you learn to read and write?

DEFENDANT TAYLOR: Yes.

THE COURT: Do you feel like you generally understand what's going on around you today in the sense that you know that you're in a courtroom and facing a charge in your case?

DEFENDANT TAYLOR: Yes.

THE COURT: All right. You filled out a financial affidavit here. It indicates that you do not have any assets in the form of real estate or stocks or bonds or anything like that, is that correct?

DEFENDANT TAYLOR: Yes.

THE COURT: You don't have any money on hand saved

up?

DEFENDANT TAYLOR: No.

THE COURT: All right. Well, it looks as if you don't have any assets, according to this affidavit, that would mean that you would qualify to have a lawyer appointed or lawyers appointed at government expense. Do you want me to appoint a lawyer to represent you in the case?

DEFENDANT TAYLOR: No.

THE COURT: You do not want an appointed lawyer?

DEFENDANT TAYLOR: No.

THE COURT: All right. A person does have a right to represent themselves under the constitution as it's been interpreted by the Supreme Court in *Faretta versus California*, if I remember the citation from Judge Powers, allows you to represent yourself. As a practical matter, Mr. Taylor, I would never recommend to any defendant in any case that they represent themselves and in a case where a person is charged with a capital offense that is an offense where they are subject to possible death penalty, I certainly wouldn't recommend it. Do you have some particular reason why you want to represent yourself in this case?

DEFENDANT TAYLOR: If I tell you you got to be born again to understand what I have to tell you, you wouldn't understand.

THE COURT: If you told me I would not understand?

DEFENDANT TAYLOR:  Yes, sir.

THE COURT:  I would like you to just try me out on that.  Can you just kind of let me know what it is?  I mean, I might understand more than you think.  Why wouldn't you want a lawyer?

DEFENDANT TAYLOR:  Because my heavenly father told me I don't need a lawyer.  I don't need you guys to appoint me no one.

MR. ORTWEIN:  Your Honor, could I request that maybe a recess as to this issue, and, also, possibly if the marshals could let him talk, to discuss this matter with his mother before the Court makes an ultimate decision in regard to this issue.  And let me say, I just heard what Your Honor heard, I just think that might be in the best interest of justice in this case, this situation.  And I'm candidly not sure at this point without advice other than from the Court that this young man understands fully the consequences of his request to the Court, and then make the determination as to whether or not he persists in that matter, and look at elbow counsel issues and other matters.

THE COURT:  Well, I'll certainly allow that.  I'm going to allow you to have a recess to talk with him and also have his family talk with him.  Mr. Taylor, people of faith when they get sick quite often go to doctors.  Now, I recognize that there is a type of faith of people who don't

believe in doctors, that's very rare. Most of the people that I know, Baptist, Presbyterian, Methodist, Episcopalian, all of those folks, they have, they're people of faith, but they, when they don't feel well go to a doctor. Doctors are skilled. They're skilled at treating people with illnesses. I might suggest to you that perhaps the creator himself has given them the power to do that. He has let them be trained. He has let them become capable of doing that.

Most people don't think of lawyers in that light, but lawyers are given skills and abilities to do things. They spend years doing it. In the case of these two men who sit on each side of you, they have done it for a number of years skillfully. And they have learned to help people when they are in trouble. In fact, they have spent their lives trying to help people who are in trouble. If they were appointed to represent you, they would be taking on the burden of using every skill that they possess in order to properly represent you in the case. Representing yourself even though you may be a man of faith does not teach you the Federal Rules of Evidence, it doesn't teach you the Federal Criminal Procedure. These men have through years of experience, learned all of those things.

DEFENDANT TAYLOR: I didn't say I didn't need a lawyer. I didn't say I didn't need a lawyer, but I don't want them court appointed. Richard Heinsman will be paid for my

lawyer, if he want those guys to help, they will help.

THE COURT: Let me take up that. I understand, Mr. Heinsman, that you were not paid to represent him in federal court?

MR. HEINSMAN: I'm not, Your Honor.

THE COURT: Mr. Heinsman is not wanting to get out of your case. Mr. Heinsman has been retained in a state court proceeding. You're talking about a hearing here or a case here that involves an enormous undertaking, an enormous undertaking in the sense of how much money would be involved. I'm going to let you all talk about that. I think that might be the best thing to do at this stage and I'll take a recess and allow that and come back today, if possible, if not, we can consider waiting until Friday on this.

Mr. Taylor, I want -- you need to talk fully about this. We will, we'll come back to that in just a few minutes. Now --

DEFENDANT TAYLOR: I told you you wasn't going to understand. I heard a word from the Lord. I'm just delivering what I heard.

THE COURT: Okay. Well, why don't you just have a seat right there and we'll come back to you. Now, I'm going to go back and ask you, Mr. Taylor, one more question. You do have a copy of the indictment in your case, right, that document that charges you? You've got that there in front

you?

DEFENDANT TAYLOR: Yes, sir.

THE COURT: All right. And that also would be the case for Mr. Matthews, Mr. Marshall, rather, you've got a copy, Mr. Marshall? Mr. Martinez.

MR. MARTINEZ: I'm sorry.

THE COURT: Do you have a copy, Mr. Marshall, of the indictment in the case?

MR. MARTINEZ: He does, Your Honor.

THE COURT: All right. And I do want to be sure that you've got one. I'm now going to take Mr. Matthews' case up. Mr. Matthews, if you'd stand where you are. Mr. Matthews, is your name Sir, S-i-r, Jack, J-a-c-k, Matthews, M-a-t-t-h-e-w-s?

DEFENDANT MATTHEWS: Yes, sir.

THE COURT: All right, sir. How old are you, Mr. Matthews?

DEFENDANT MATTHEWS: Twenty-one.

THE COURT: And how far did you go in school?

DEFENDANT MATTHEWS: To the 10th.

THE COURT: Thirteen years?

DEFENDANT MATTHEWS: To the 10th.

THE COURT: To the 10th grade. To the 10th grade. All right, sir. Now, Mr. Matthews, did you learn to read and write?

DEFENDANT MATTHEWS: Yes, sir.

THE COURT: All right, sir. Your date of birth?

THE DEFENDANT: X/XX/83.

THE COURT: X/XX/83. Okay. Do you feel like you generally understand what's going on around you in the sense that you know you're in a courtroom facing a charge?

DEFENDANT MATTHEWS: Yes, sir.

THE COURT: All right, sir. Now, you filled out a financial affidavit and in that financial affidavit it indicates that you don't own any real estate and you don't have any other assets, is that correct?

DEFENDANT MATTHEWS: That's correct.

THE COURT: Pretty much broke. Okay. Do you think you have any family that's going to be able to hire a lawyer?

DEFENDANT MATTHEWS: I don't think so right now.

THE COURT: You would qualify based upon those answers to have appointed counsel in the case. Do you want me to appoint counsel?

DEFENDANT MATTHEWS: Yes, sir.

THE COURT: All right. The Court will appoint Mr. Summers. The defendant in the case is charged with a capital crime. The court is going to appoint Mr. Summers who I find to be a person who would be qualified to represent him in this case. I find that Mr. Summers is a person who is learned in the law as it relates to capital cases, and I will

UNITED STATES DISTRICT COURT

appoint Mr. Summers. I'm just going to appoint you in the case, should you have need to request additional appointed counsel, certainly, bring that to my attention.

MR. SUMMERS: Thank you.

THE COURT: Thank you for agreeing to serve. Mr. Matthews, do you have a copy of the indictment in the case?

DEFENDANT MATTHEWS: Yes, sir.

THE COURT: All right. Now, in just a minute I'm going to talk to you all about some procedures. You can have a seat if you want. We're going to be continuing this case until 2:00 on Friday. I know for certain that what we will be doing there at least as certainly as I can know at this stage with things being somewhat fluid, I'm going to attempt to have counsel here to represent Mr. Marshall. I will have Mr. Taylor here and will hopefully have resolved these issues regarding the counsel before then, but if we do not resolve those today, I will take those up again on Friday. I would like to be able to resolve them today if possible since Friday is a significant date for any defendant.

The government is seeking detention in these cases. The rebuttable presumption, I take it, would apply in these cases as to these counts. That means that under federal law because of the charges that are pending against you, there is a rebuttable presumption that you, that presumption is that

you each are both a risk of flight and a danger to the community. That each of you are entitled to have a hearing to determine if there are conditions that can allow you to be released on bond. The purpose of the hearing on Friday will be to hold such a hearing.

During such a hearing, the government calls witnesses, your lawyers will have the right to cross-examine those witnesses. It is, of course, important that you have a lawyer at these proceedings in order to do that. Then, your lawyer can advise me things that they want me to know about the case. The lawyer can present evidence. The lawyer can also proffer it's called, simply tell me things that they want me to know about your case. And so, all of these procedures will occur on Friday. It may be that we will be able to conduct an arraignment on this, may not be. I do not know at the present time and I will reserve ruling on this question.

Now, I will ask the government now if there are additional things that I need to do with regard to Mr. Matthews or Mr -- if there are additional things that I would need to do with Mr. Marshall. I think that we've done the things that we need to do as to those two individuals. I do want to give Mr. Taylor an opportunity to talk with all of the lawyers here, and, if possible, family members. Can that be arranged in the courtroom, if that is needed?

THE MARSHAL: Can we discuss it?

THE COURT: We can. It can be anywhere that you tell me it can be done. I mean, if it cannot be done here then you need to tell me that.

THE MARSHAL: Yes, sir.

THE COURT: I'm not trying to order that. What I'm trying to find out if counsel needs to be here further. Mr. Summers, do you have some things that you need to bring to my attention?

MR. SUMMERS: Yes, Your Honor, two things. Because of the shortness of time I would anticipate asking to have Detective Chris Chambers here who I understand was the state case agent and Agent Melia. I would file the subpoena, Your Honor, of course, with the shortness of the time I would ask that the government would cooperate by having Agent Melia here. I will get the subpoena just to put them on notice for them as far as on this question of detention, Your Honor.

The other thing, Your Honor, is I recognize the responsibility of the marshal's office, they're always very cooperative. I would hope that this gentleman as best as possible could remain at Hamilton County. I know that there are contractual matters involved, but this is a very unique case, Your Honor, and I think access to counsel is strongly mandated by the Sixth Amendment and responsibilities that I and other counsel for the co-defendants have, and I would respectfully ask if any way possible that my client and if the

other counsel join in that they be kept in the Hamilton County jail in spite of the fact that I know that there is a constant changeover from the contracts and Bradley County, and that they move people out because this is an exceptional case.

MR. MARTINEZ: Your Honor, may I along that same line, as far as Mr. Marshall. I just realized that he's here in a Fulton county jail uniform and I asked him, he just arrived from Atlanta this morning. And he was told by the FBI that he'd be brought back today and he asked me to ask the Court what the status is, is he going to remain here in Hamilton County, is he here on a writ? He was told he'd be brought back immediately to Atlanta.

THE COURT: My understanding is that he's on a writ. He's here on a writ for the case. I think he stays here until this case is over.

MR. MATTICE: That's my understanding, Your Honor. There is a federal writ for Mr. Marshall.

THE COURT: I'm afraid if he is here on --
Mr. Martinez, he will be here. Mr. Ortwein?

MR. ORTWEIN: Your Honor, of course, my status is a little uncertain at this point in time, but in order to protect Mr. Taylor's rights, I would join in Mr. Summers' request relative to the presence of Agent Melia and Detective Chambers for Friday. And I think that is essentially the matter. And, also, I would join in his request relative to

place of incarceration pending trial.

THE COURT: All right. The general rule is that the marshals control where the marshals keep prisoners. However, I do want the marshals to be aware that there is a heightened need in death penalty cases for counsel to be readily able to consult with their clients. And if there is a way that these defendants could be kept in the Hamilton County jail it is particularly important that these defendants be readily available to their lawyers. And so, if the choice is between someone else being sent to Bradley County and these people being here, I would prefer that it would be most helpful to the Court if that could be --

THE MARSHAL: Sure. Their security classification dictates that they will remain in Hamilton County.

THE COURT: Throughout the duration. That resolves all of the issues that need to be, that need --

MR. SUMMERS: Thank you, Your Honor.

THE COURT: They will need to be there and they will be. That's resolved. With regard to their request that's been made by counsel, the subpoena, with regard to subpoenas is a more formal request. Does the government want to be heard at this point?

MR. NEFF: Judge, I believe that at the detention hearing the defendant is allowed to call whatever witness he wants. We'll certainly cooperate to do whatever we can to

make sure that the witnesses that they've requested are here. Obviously, though, just to be clear to the Court, they are not entitled to a preliminary hearing and it is a detention hearing, the only issue before the Court would be detention and not probable cause.

THE COURT: All right. So, you're going to cooperate and have them here, but you're reserving your right to argue they should be able to call them. Is that what I'm understanding?

MR. NEFF: Not that they're able to call them, I'm --

THE COURT: Question of probable cause is not a question, probable cause is not the question, it's detention?

MR. NEFF: Right. Yes, sir.

MR. MATTICE: We don't want to represent, Your Honor, that we have control over either Detective Chambers or Agent Melia.

THE COURT: I bet you've got -- well --

MR. MATTICE: The government intends to cooperate.

THE COURT: You want them to issue subpoenas, is that what you're telling me, issue those subpoenas?

MR. MATTICE: We will work with defense counsel.

THE COURT: Work with them and let them, so they can issue subpoenas if need be, that will be, that will resolve that.

MR. ORTWEIN: Again, I'm still not sure what my status is on behalf of Mr. Taylor. Let me say that and my status may be unknown of who his counsel between now and Friday, and, obviously, that's a short period of time, so we would appreciate for getting subpoenas issued --

THE COURT: We're only taking a recess now on the question of counsel. We're going to try to revisit that in just a few minutes. I'm going to be in recess to allow you an opportunity to talk with your client. Mr. Heinsman, I appreciate your remaining here and --

MR. HEINSMAN: I understand.

THE COURT: -- you're being courteous to the Court in doing that. And is there anything else, Mr. Summers?

MR. SUMMERS: May I be excused, Your Honor?

THE COURT: I'm going to be allowing the other two to be excused.

MR. MATTICE: Your Honor, if I might just raise one issue. I believe that we're going to be providing, all counsel are going to be provided with copies of the pretrial services report and would it be possible under the circumstances for counsel to retain the pretrial services report pending the hearing on Friday?

THE COURT: It will be possible under the circumstance. These reports are private, and I'll repeat this for the lawyers, so that -- most of you probably know this,

there has been a little change in the procedure. These reports are by statute required to be private and so they are taken up by pretrial services. The purposes of the report is to deal with questions of release, while that issue is open, which it is now, both sides can keep these reports. Once the issue of detention or release is settled, the reports must be retained by pretrial services.

Now, in spite of that, any counsel who wants a separate listing of the prior record of the defendant, that will be provided by pretrial services. And, next, there is no intention of preventing counsel from reviewing that. They can go to pretrial services. It's just not supposed to be circulated around. It was -- that rule exists because of questions of privacy. The statute that provides it also provides that that report will be given to the probation office, and so, counsel needs to know that, that that's something that would be available to the probation office later on down the road. So, there is no intention of keeping it from you, it's just that we're following the provisions of the statute that says it's supposed to be kept. But for now it can be kept because the detention hearing hasn't occurred. We're going to do that on Friday.

MR. NEFF: Judge, I'd point to the version of the pretrial services report that are out now only have the criminal history of the defendants in them, I don't believe

there is any personal information in there.

THE COURT: And that may be so in the case, but even if it were not, if it were a more illustrative report at this point it would be kept until the detention issue is settled. Mr. Mattice.

MR. MATTICE: Your Honor, the only other question I have, Your Honor, with respect to Mr. Taylor, are we going to stay here and take --

THE COURT: We're going to take a 15 minute recess. We're going to during that time hopefully allow counsel to talk with Mr. Taylor, and, if possible, if possible, to have any family member that if it can be arranged with the marshals. And I understand that you all have to make that call. Do you think it will be possible --

THE MARSHAL: What we'd like to do is clear the courtroom just do it here because the mother --

THE COURT: We will be clearing the courtroom. It's not the intention of making them not open to the public, the only reason for clearing the courtroom is going to be to allow, is to be allowing Mr. Taylor to talk with his family. And certainly immediately after that's happened everybody can come back in the courtroom. We're just going to need to do that for security reasons while they talk. But first we can, Mr. Ortwein, Mr. Clements, do you all think, Mr. Heinsman, do you think it's best for him to talk to his mother first or you

all first?

MR. ORTWEIN: If it please the Court, I really think that Mr. Heinsman ought to be best to answer these questions.

THE COURT: All right. Mr. Marshall and Mr. Matthews can be returned to the custody of the marshals. And counsel can be excused as to those two defendants. And I'm sorry that we had to, that it took so long to get to and I appreciate counsel's willingness to serve. We'll be -- we're going to be taking a 15-minute recess.

(Short recess.)

THE COURT: All right. We're back on the record in Mr. Taylor's case. We have been considering the question of counsel. And I took a recess to allow Mr. Taylor to talk with Mr. Heinsman. And I appreciate, Mr. Heinsman, once again, your being present to assist the Court in the matter. What is the status of the case now, Mr. Ortwein? Do you -- have you had a chance to talk to Mr. Taylor?

MR. ORTWEIN: My understanding, if it please the Court, is that and Mr. Taylor can tell you that Mr. Taylor does desire to have appointed counsel.

THE COURT: Mr. Taylor, if you would stand where you are. You're still under oath. Having had a chance to talk with the lawyers in the case and also with your family, based upon this affidavit, I find that you qualify to have a lawyer appointed. Do you want me to appoint counsel for you?

DEFENDANT TAYLOR: Yes.

THE COURT: All right. I'll do that. I'm going to appoint counsel. I'm going to appoint Mr. Bill Ortwein as lead counsel in this case. And, Mr. Taylor, these lawyers are very experienced lawyers. And Mr. Heinsman is a very experienced lawyer himself, but he does not have the depth of experience that these lawyers do here in federal court. Mr. Bill Ortwein will be lead counsel and I'm going to appoint Mr. Howell Clements as second chair in the case. And, actually, in this instance both of these lawyers are the very top notch lawyers you could find and they will be representing you in the case. And I appreciate Mr. Heinsman's help in this.

Now, you need to know that if you did have family that was able to hire a lawyer, you're not prohibited from hiring a lawyer, but hiring a lawyer in a case like this is a very significant thing. It requires very, very large sums of money to adequately defend a case like this. And in this case you've got now two lawyers to assist you. They will be allowed to ask for services to assist them. So, that will be your defense team in this case. And I do think that you have made the right choice in accepting counsel.

Now, today I have appointed counsel to represent you in the case, and I have explained the charges to you, the government's lawyer has advised you of the maximum punishments

in the case. I'm going to continue the hearing until 2:00 on Friday. The purpose of that hearing will be a detention hearing to determine if bond can be allowed or if you must be detained. And it will also perhaps be the arraignment. You will be able to review the indictment with your lawyers. And at that stage we will take pleas to the indictment if we do have the arraignment. And at that stage the scheduling of the trial of your case will take place as well.

Those then, I think, are the things that we need to do in the case just in the initial appearance. That's what we've done here today, it's only the initial appearance. I will be scheduling some sort of a conference with defense counsel in the case to discuss the budget, and that kind of matter. We might think about trying to do that Friday if you all are going to be here if that would be a convenient time. You need to be thinking about that. And you might mention to Mr. Summers that we need to be thinking about that. And I can provide you some material, I think, that will be of help.

All right. Is there anything further that needs to be done as far as the government is concerned in this hearing?

MR. MATTICE: No, Your Honor.

THE COURT: All right. Counsel?

MR. ORTWEIN: No, Your Honor.

THE COURT: Anything further? Very well then, let this hearing be continued. It will be adjourned today and

continued until 2:00 on Friday the 29th of October.  We'll be adjournment.

END OF INITIAL APPEARANCE

I, Shannan Andrews, do hereby certify that I reported in machine shorthand the proceedings in the above-styled cause held October 26, 2004, and that this transcript is an accurate record of said proceedings.

s/Shannan Andrews
Shannan Andrews
Official Court Reporter

UNITED STATES DISTRICT COURT