# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
### AT CHATTANOOGA

UNITED STATES OF AMERICA, )
)
      Plaintiff, )
)     Case No. 1:04-cr-160-1
v. )     U.S. District Judge Curtis L. Collier
)
)
REJON TAYLOR, )
)
      Defendant. )

## OBJECTIONS TO METHOD OF
## JUROR CONTACT AND INTERVIEWS

On April 11, 2019, the Court granted Rejon Taylor's motion to contact the seated jurors and alternates (Doc. 1022). (Doc. 1029). Mr. Taylor appreciates that the Court is permitting juror contact, but is concerned that the proposed process poses an inconvenience to the jurors and chills candor about any potential bias or misconduct. Therefore, Rejon Taylor, by and through undersigned counsel, hereby objects to the Court's proposed method of juror contact and interviews during the investigatory phase of this Section 2255 proceeding.

Inviting the jurors "to come into court…for questioning" puts the onus on jurors, some of whom live outside Hamilton County and many of whom work during court hours. (Doc. 1029, PageID #10471, p.2). Mr. Taylor can contact the jurors and arrange to meet with any willing juror at a place and time – including during the evenings and weekends – convenient to each juror. Such contact is not unprecedented. *See United States v. Davis*, 2:94-CR-381 (E.D. La. May 12, 2014)

1

(ECF No. 2352) (granting death sentenced federal prisoner leave under local rule to contact jurors in § 2255 proceedings). The court in *Davis* ordered a more hands-off approach, "allow[ing] counsel for the defendant to contact the…jurors to determine if they will consent to be interviewed." *Id.* The court's only constraint pertained to the substance of the interviews, specifying that "[a]ny interview or contact must comply with the restrictions imposed by" the local rule.[1] *Id.*

Discussing bias with a juror, including racial bias, is a sensitive, potentially embarrassing topic,[2] one that is made more difficult in a formal courtroom setting before a federal judge, the government, defense counsel, and a court reporter. *See* Neil Vidmar and Valerie P. Hans, *American Juries: The Verdict*, 92-93 (2007) (describing the "social desirability effect," which highlights an individual's perceived need for others to view them in a socially respectable light, often preventing people from disclosing biases that are regarded as socially unacceptable). Although evidence of bias and misconduct may eventually come before the Court under more formal circumstances, such formality may chill any discovery of bias and misconduct during this investigatory phase of the §2255 proceeding. As with capital

---

[1] As such, the court prohibited "disclosure of the vote of any other juror, the jury deliberations or evidence of improprieties in the jury's deliberations, 'except as to whether (a) extraneous prejudicial information was improperly brought to the juror's attention; (b) any outside influence was improperly brought to bear upon any juror; or (c) there was a clerical mistake in entering the verdict on the verdict form.'" *Davis*, 2:94-CR-381 (E.D. La. May 12, 2014) (ECF No. 2352).

[2] "[R]acial dialogues are difficult…because they (a) highlight major differences in worldview, (b) [are] challenged publicly, (c) make the person feel at risk for potentially disclosing intimate biased thoughts, beliefs, or feelings related to race, and (d) trigger intense emotional reactions." Derald Wing Sue, Gina C. Torino, Christina M. Capodilupo, *How White Faculty Perceive and React to Difficult Dialogues on Race*, The Counseling Psychologist, vol. 37, No. 8, at 1092 (2009) (internal citations omitted).

mitigation interviews that broach painful or embarrassing information, juror interviews are best conducted in-person in an informal, relaxed environment. *See Supplementary Guidelines for the Mitigation Function of Defense Teams in Death Penalty Cases*, 26 Hofstra L. Rev. 677, 690 (2008) (Guideline 10.11(C)).

Given that the Court's proposed method of juror contact and interviews may pose an inconvenience to jurors and chill candor regarding bias and misconduct, Mr. Taylor respectfully requests that this Court allow Mr. Taylor to contact the jurors and schedule an interview at a place and time convenient to each juror willing to be interviewed. Should Defendant discover evidence of bias or misconduct, Defendant will collect such evidence in a signed affidavit and bring it to the attention of this Court in a later stage of the §2255 proceedings.

Dated: April 15, 2019

Respectfully Submitted,

/s/ Kelley J. Henry
Kelley J. Henry, BPR # 021113
Supervisory Assistant Federal Public
Defender, Capital Habeas Unit

/s/ Amy D. Harwell
Amy D. Harwell, BPR # 018691
Assistant Chief, Capital Habeas Unit
Office of the Federal Public Defender for
the Middle District of Tennessee
810 Broadway, Suite 200
Nashville, TN 37203
615.736.5047
amy_harwell@fd.org
kelley_henry@fd.org

/s/ Alexis J. Hoag
Alexis J. Hoag, BPR #028712

3

Senior Counsel
NAACP Legal Defense and
Educational Fund, Inc.
40 Rector Street, 5th Floor
New York, New York 10006
Tel: (212) 965-2200
Fax: (212) 226-7592
ahoag@naacpldf.org

*Counsel for Movant*

4

## CERTIFICATE OF SERVICE

I hereby certify that on the 15th day of April 2019, I electronically filed the foregoing with the Clerk of the Court using the ECF system, which sent notification of such filing to all counsel record.

/s/ Kelley J. Henry
Kelley J. Henry, BPR # 021113
Supervisory Assistant Federal Public
Defender, Capital Habeas Unit
Office of the Federal Public Defender
for the Middle District of Tennessee
810 Broadway, Suite 200
Nashville, TN 37203
615.736.5047
kelley_henry@fd.org

5